MORTIMER (UNITED STATES v.). See Case No. 15,821.

---

## Case No. 9,864.

### The MORTON.

[1 Brown's Adm. (1876) 137.] [1]

Circuit Court, E. D. Michigan.

COLLISION—DUTY OF TUGS IN THE ARRANGEMENT AND MANAGEMENT OF TOWS—PLEADINGS—AMENDMENTS.

1. A tug is bound to the exercise of ordinary care in taking up, arranging and managing the tow.

2. Having full control of the vessels towed, she must direct as to the length of their lines, the order in which they shall be towed, and prudence requires that the heavier draft vessels should be placed behind those of lighter draft.

[Cited in Orhanovich v. The America, 4 Fed. 340.]

3. The tug is bound to know the channel, and to keep the tow in the deepest water.

4. If the ordinary lights or landmarks are obscured, the tug should provide for the emergency by slowing or stopping the engine, and sounding the channel.

[Cited in The Armstrong, Case No. 540.]

5. The vessel towed is bound to prevent a collision, if she can, or to make the damages as light as possible.

6. The allegations and proofs must coincide; and the court cannot consider evidence not in accordance with the issues made by the parties.

7. The court will allow amendments upon terms even on the hearing of an appeal.

Libel for collision. On the 30th of June, 1863, the tug Morton, Kimball master, was coming down St. Clair river, having in tow the four following vessels in their order: Superior, drawing 11 ft. 4 in., Chase master; Vanguard, 10 ft. 4 in., Davis master; Yankee and Bermuda. At sundown, they passed Jerry's Ranch and the range lights on the flats just after they were lighted. Before passing the lights, the Superior and Vanguard, which were carrying part of their sails, took all the sails in. The depth of water on the flats at the time and during the season was 12 ft. 6 in. or more, and vessels of that draft constantly went through in safety. The deepest water was to the westward of the range. The tug, before reaching the end of the dredged channel, got too far to the eastward and stranded the Superior. The master of the Superior sang out to the Vanguard an order to starboard and then to port. The latter order was immediately obeyed by the Vanguard. The tow line from the Superior to the Vanguard was about thirty fathoms long or the usual length. The Vanguard swung slowly, and struck the starboard quarter of the Superior with the bluff of her port bow, and drove her over the shallow place into deep water, and caused the injury complained of. The tug gave the vessel no warning and did not sound the channel

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

or slow, stop or back her engine. The captain, mate and wheelsman were attending to the navigation of the tug. She had no lookout stationed forward. On the trial in the district court, the libel was dismissed, and the case appealed.

J. S. Newberry, for appellant.

W. A. Moore, for appellee.

SWAYNE, Circuit Justice (orally). In this case it is alleged on the part of the libellants: That there is no issue tendered by the pleadings as to any fault committed by the Vanguard, and no fault charged upon the Superior as to her conduct; that the proofs taken in regard to an issue not tendered by the pleadings are inadmissible, and should not be considered by the court.

The rule is well settled, that the allegations and proofs must coincide, and that the court cannot look outside of the pleadings to consider evidence not in accordance with the issues made by the parties. 2 Conk. Adm. 245–250; McKinley v. Morrish, 21 How. [62 U. S.] 343; The Rhode Island [Case No. 11,745]; Soule v. Rodocanachi [Id. 13,178]; The Boston [Id. 1,673]; The Sarah Ann [Id. 12,342]. It is equally well settled, that in order that substantial justice may be done, the court will allow amendments to be made, even at the hearing of an appeal, taking care that no injury be done to either party. And in case injury should be likely to ensue from allowing amendments, the case would be continued, to allow the party to take such evidence as he might deem material on the new issue. Id.; The Boston [supra].

In the view I shall take of this case, however, it will not be necessary to continue the case, but I shall consider the evidence precisely as if the amendments that the party might make were already made. In regard to the responsibility of tugs, when taking other vessels in tow, we hold that they are bound to use ordinary care and diligence in taking up, arranging and managing the tow, according to the exigencies of the business. That while engaged in such business, tugs, as well as passenger steamboats, are bound to have a competent lookout properly stationed and vigilantly employed. That in this case it is not certain that the collision was occasioned by the absence of such lookout. That the tug has the full government and care of the vessels towed; she must direct as to length of lines; the order in which they shall be towed; that good management and common prudence require that the heaviest draft vessel should be placed aft of those of lighter draft; and had that precaution been observed in the present case, the present collision would not have taken place. That ordinary care on the part of the tug requires them to know the channels through which they undertake to tow vessels, and where it appears there was a good draft of water, the tug is bound to keep in it. In this case there

was 12 ft. 5 in., while the Superior was drawing only 11 ft. 6 in. Vessels drawing 12 ft. 4 in. went through that channel in safety the same day. It is clear that the tug got too far to the eastward, and thereby stranded the Superior, and was in fault therefor. Again, if for any reason the ordinary ranges, lights or landmarks are obscured, it is clearly the duty of the tug to take such other precautions as may be necessary, either by slowing, stopping or backing the engine, or sounding the channel. She has no right to dash blindly ahead, and rush into dangers she neither knows nor can avoid. The Rose, 2 W. Rob. Adm. 3; The Birkenhead, 3 W. Rob. Adm. 76, 81; The Perth, 3 Hagg. Adm. 414; Chamberlain v. Ward, 21 How. [62 U. S.] 548.

Upon these considerations we hold the tug in fault, and grossly so. But this would not necessarily make the tug liable for the entire damages, for the Superior may also be in fault. The vessel in tow had also duties to perform. She is bound to prevent the collision if she can; and if she cannot, then she is bound to make the damages as light as possible. This is a rule of universal law. Abb. Shipp. 154, 341; Heckscher v. McCrea, 24 Wend. 304; Taylor v. Read, 4 Paige, 571; Emerson v. Howland [Case No. 4,441]; Miller v. Mariner's Church, 7 Greenl. 51. It is alleged that the master of the Superior gave the order first "starboard," then "port," and that the master of the Vanguard repeated the orders in the same way. The experts show very clearly that the proper order in this case was "port," and that the contradictory orders would probably lead to confusion. Yet Davis, the master of the Vanguard, and others, swear that the orders were given in instantaneous succession, and that the only order obeyed on his vessel was the order to "port;" that the helm was immediately put to port.

In considering the weight of evidence, it is a well settled and sound principle of construction that the direct evidence of what was done on one vessel is of much greater weight than the hypothetical evidence of experts or others giving their opinions as to what was done. Even if it was shown that a wrong order was given and obeyed, either on the Superior or Vanguard (which is not shown, however), under the exigency of the circumstances and light of authority, it could not be considered a fault. The Genesee Chief, 12 How. [53 U. S.] 461. We can find no fault on the part of the Superior or the Vanguard. But even in this case, were there fault on the part of the Vanguard, it would not prevent a recovery on the part of the owners of the Superior. The New Philadelphia, 1 Black [66 U. S.] 62. The decree below must be reversed, and the cause referred to a commissioner to compute the damages.

Decree reversed.

MORTON (ATHON v.).    See Case No. 599.

MORTON (BARNARD v.).    See Case No. 1,005.

MORTON (COOTS v.).    See Case No. 3,205.

MORTON (HOWE v.).    See Case No. 6,769.