Ruffin, Chief Justice.
 

 The Court is of opinion that so much of the decree as requires the defendant personally to pay to the plaintiffs the mortgage debt and interest, and awards execution for the same, or any part of it, is erroneous.
 

 . The jurisdiction of equity in mortgages is simply to decree redemption or foreclosure. To that end the Court directs accounts to be taken of the sum due, in order that it may be known how much the mortgagor must pay to entitle him to a reconveyance, or to prevent his equity of redemption being foreclosed. Of late years, a beneficial practice has gained favour, until it may be considered established in this country, not absolutely to foreclosure in any case, but to sell the mortgaged premises, and apply the proceeds in satisfaction of the debt: if the former exceed the latter, the excess is paid to the mortgagor; if it fall short, the creditor then proceeds at law on his bond or other legal security, to recover the balance of the debt.
 
 Gillis
 
 v.
 
 Martin,
 
 2 Dev. Eq. 470. In
 
 Lansing
 
 v.
 
 Goelet,
 
 9 Cowen, 346, Chancellor Jones treats the subject much at large, and with great learning.
 

 But the debt is never recovered in the Court of Equity on a bill for foreclosure. Debt or no debt is purely a legal question, and the parties must try it at law. The Court of Equity acts only upon the equitable security, not upon the debt. It makes the pledge absolute, but it cannot decree the independent payment of the money due, over,
 
 *624
 
 beyond the value of the pledge. His honor, therefore erred in the decree as pronounced; because; he therein merely declares, that the defendant owed the plaintiffs a certain sum at the date of the mortgage, and that the same with interest is wholy unpaid ; and therefore decrees that the defendant pay to the plaintiffs their said debt and interest; and to that end, that a sale of the premises be made, and after applying the proceeds, that execution go against the estate or person of the defendant for the residue. Upon the facts upon the face of the decree, therefore, it cannot stand.
 

 Nor do we think that the allegations of the bill and ■ the proofs, will enable this Court to supply the defect in the decree, by declaring the facts necessary to support it. There are cases in which this Court will decree the payment of a legal money
 
 demand.
 
 If the bond or other security be lost by time or accident, the jurisdictio'n is established;
 
 a fortiori,
 
 it exists when the creditor has been deprived of them by the fraud of the other party. The object of the bill, was to charge that' case. The mortgage contains no acknowledgment of debt, or covenant to pay money. It purports to be a bargain and sale for two lots of land in fee simple, in consideration of the sum of one thousand five hundred and two dollars and eighty-four cents, paid by the plaintiffs to the defendant, on the day of the date, 19th of March 1832, with covenants of general warranty; with a proviso, to
 
 be void upon
 
 payment of the same sum in Charleston, South Carolina, by the defendant, on the 11th of January 1834. On its face therefore, it would not appear to be connected with a personal debt of the defendant. The bill charges however, that it was ; that in truth he owed the plaintiffs that sum for merchandize before sold, and for which they held his note; that, doubting his solvency, they wished further security; and that the defendant proposed to give a mortgage on this property, by way of additional security, which they agreed to accept; it being represented to them that the property was of value to answer
 
 the
 
 debt. The bill then states, that when the defendant was about to execute the deed, he claimed to have his note surrendered
 
 *625
 
 and cancelled, which they acceeded to, upon the belief that the defendant was better acquainted with business than they were; and that the deed would be sufficient evidence of the debt, and also the lots a sufficient security;. and the bill thereupon charges, that in truth the lots will not pay more than half the debt, and that the defendant knew it at the time, and designed by his assertions to the contrary to obtain the surrender of his note upon a false pretence, and to cheat them out of the money.
 

 It is manifest, that the whole fraud consists in the alleged false representations as to the value of the property. It is not a fraud to obtain a personal discharge from a debt, by substituting a real security. It is often a better secui’ity and to the advantage of the creditor to get it. The circumstances of the defendant were doubted by the plaintiffs, as the bill admits; and it is not improbable that the creditors should prefer the mortgage without any security against the original debtor, to his note or bond without the mortgage. The question is, did they, or had they'reason to expect both or only one ? The presumption is, the latter only, because they say, they consented to give up the note. But they complain that they were entrapped into that. The answer is positive and precise to the contrary; and states, that it was distinctly understood, that the lots were to be the only security ; and that the reason why he insisted on the clause for redemption was, that the defendant really thought them worth more and hoped to redeem them. He admits that in that, he has been disappointed, and the lots, like most property at county court houses in the back country have fallen. In these statements, the answer is supported by the subscribing witnesses to the deed. They prove that at the execution of the mortgage, the value of the lots was from one thousand two hundred dollars to one thousand five hundred dollars; and that, upon one of them advising the defendant not to redeem them, but let them go at the price, the defendant said, they had cost him more and were worth more, and that he would redeem them, if he could. The other witness says, he thinks the lots are now worth the whole debt. Conse
 
 *626
 
 quently the foundation laid in the bill, for a personal decree against the defendant, sinks under the proofs.
 

 As however, the plaintiffs may possibly recover at laW' on the original sale and delivery of the goods, or in some other way, the Court will not simply foreclose the mortgage ; but so much of the decree as directs a sale of the premises, may be affirmed. The residue of the decree must be reversed with costs in this Court, without cost to either party in the Court below.
 

 Per Curiam. Decree reversed.