Gaston, Judge,
 

 having stated the case as above, proceeded as follows: It does not appeal- for what reason the Court refused permission to the defendant to file his petition for a re-hearing. As such a petition does not per
 
 se
 
 stay proceedings on the decree sought to be re-heard, and when it is allowed, affords to the Court an opportunity of correcting any injustice it may inadvertently or erroneously have committed^ it is almost a matter of course, unless the application be unreasonably delayed, not only to receive a petition, but tipon it to re-hear the cause. It is said here, however, that the Court properly refused the leave asked for, because it was in. effect to obtain a re-hearing of a decree rendered by consent. We do not think só. The decree to which the petition distinctly refers, is that of the Spring term, 1839, which purports to be in no respect founded on consent, but to be the finding and judgment of the Court upoh the bill, answer} proofs and exhibits in the cause. We can very well understand the propriety of the Court refusing to re-hear a decree rendered by consent, because it is in truth the decree of the parties; and in such a decree,
 
 ^ s tat pro rations voluntas,”
 
 their will is a sufficient reason. But we do not see why an interlocutory order, subsequently made upon the footing of that decree, although rendered by consent, will prevent the impeaching of the decree for error. Such
 
 decree
 
 remains, nevertheless, the decree of the court; and until it is suspended or reversed, must be executed either voluntarily or compulsatorily. Facilities given to its execution, ought not to bar a becoming and regular enquiry into the merits of the, decree itself.
 

 Considering, therefore, that the defendant, Wilcox, is entitled to be heard here, in relation to the matters adjudged by the decree, which he sought below to have re-heard, as well
 
 *42
 
 as upon the matters presented by the report and exceptions, we’have heard the cause
 
 de novo.
 

 remove1 tn slaves out byonehav-of íímited^inthem1 hl though idle, the^hsoÍUgTOuntíer for claim-toSpreTCnty movai?"
 

 The charge of “ m too vjgue foundaúon sentence!*31
 

 Upon such hearing, we have come to a conclusion, differing greatly from that which was declared below. We agree thus far with his Honor, that the defendant has not only claimed to have a right to sell his interest in the slaves comprehended in the marriage settlement, a claim perfectly well founded, we suppose — but has thrown out threats of a purpose to sell them out of the State. We do not agree to the declaration, that the defendant actually purposed or intended to remove them. We believe that these were idle threats, made in vexation after his wife had left him, and for the purpose of being repeated to her. Nevertheless, as they have aff01'ded her a ground for claiming that her solicitude about the slaves should be quieted, we acquiesce in the propriety requiring some security from him against a removal of the property without the State. As he is confessedly a man un®mharrassed fortune, a simple injunction to this effect is all that is now necessary.
 

 In the court below, the claim of Mrs. Wilcox to a decree against her husband for maintenance and support, during her separation from him, was not put upon the ground that such separation had been compelled by his ill treatment, Nor, in our judgment, could it have been placed upon that ground. Neither the pleadings nor the proofs, will justify a declaration that she was compelled to leave him because of his ill treatment. No objection, indeed, has been taken on either side to the proofs — if proofs they may be called — óf the matters of disagreement between the parties, and of
 
 the
 
 causes why they live apart; and for the satisfaction of the parties, we have heard these proofs fully, and considered them with care. We feel it incumbent on us however to say, that none °* ^hem were properly admissible. Perhaps a charge can scarcely be brought by a woman against her husband, more indefinite than that of “ ill treatment,” comprehending as it eve5T offence against the law- of connubial love from the slightest inattention to the most brutal outrage. So vague an imputation cannot be the foundation of a judicial sehtence. Besides, it canriot for a moment be pretended, that
 
 *43
 
 every act of improper conduct, on the part of a husband, will authorise a wife to leave her proper place — his side, his homeland if she alleges that he has been guilty of such gross misconduct as to justify this seeming revolt from her duty, she must so charge the misconduct, that it may be judicially seen, when the fact is ascertained, whether-it' be of that character which induces a forfeiture of his right to her society, and that he may have a full opportunity of answering distinctly to the misconduct charged, and of explaining or disproving it. It would be a wasto of time — if not
 
 worse
 
 — to attempt any analysis of the complaints and recriminations of the parties — -the neighborhood rumours — the various surmises and conjectures and opinions of the witnesses — relative to the misunderstandings and separation of this married couple, with which, ¿nd with little else beside, their depositions are filled. We pronounce the testimony as inconclusive and unsatisfactory as the charge is vague. It lays no solid foundation whereon to adjudge which of the parties was to blame, and therefore renders it probable that neither was without fault. It is indisputable, however, that she separated from him — and we áre obliged to say, that she has not shewn any sufficient cause for that separation.
 

 The claim of the plaintiff must then rest on this, that under the marriage settlement, the profits are settled to the common use of the husband and wife, and that she has, therefore, such a distinct beneficial interest in these profits as to entitle her to a portion thereof, independently of her husband, and whenever she chooses to live apart from him. We cannot acquiesce in these views. No part of the profits of the property is settled to the
 
 separate
 
 use of the wife. The whole are receivable by the husband, and though the object or purpose for which they are limited is the use or benefit of his wife as well as of himself, they are receivable by him as
 
 her husband,
 
 and applicable to her use as
 
 his wife.
 
 There is no intimation of any purpose in this marriage, variant from that perfect union of persons which the law contemplates in such a connection. These profits are given to him, that he may the better comply with his duty to provide for his wife — but he is not bound to provide for
 
 *44
 
 her, when she disclaims his protection, and refuses to abide under his roof, It is revolting to the best interests of domestic morality and public policy, to put upon the settlement a construction which would amount to a prospective provision for separation. — and offer inducements for the violation of the plainest and most sacred duties. The plaitiff is entitled to a decent subsistence, in proportion to the extent of the means placed in her husband’s hands. — but it is while she remians under his wing, where she has plighted her troth to stay. If, indeed, he had turned her away — or by intolerable usage compelled her to leave him — then, as
 
 he
 
 has rendered the performance of
 
 her
 
 duties impossible, his obligation to support h.er, and her claims on him for subsistence, would not thereby be impaired.
 

 Our opinion, therefore, is, that the interlocutory decree which the defendant, Wilcox, prayed to have re-heard, ought to be reversed as erroneous. And, upon the whole matter, this court declares, that because of the apprehensions of the plaintiff, in regard to the safety of the negroes comprehended in fhe marriage settlement, excited by the defendant’s threats to sell them out of the State, the plaintiff is entitled to an injunction, restraning the defendant from removing the said slaves, or causing them to be removed
 
 beyond the
 
 jurisdiction of this courtrv-and approving the order whereby A. Joiner and it. B. Pearce have been appointed trustees, in the place of Samuel Johnston, the court directs that the plaintiffs bill in respect to all the residue of the matters therein contained, be dismissed.
 

 The plaintiff, or her next friend, must pay the costs of taking the account. The residue of the costs must be paid by the defendant.
 

 Per Curiam Decree accordingly.