WM. W. SIMONTON et als. v. JESSE CORNELIUS et als.

*Husband and Wife— Wills—Action to Recover Land.*

1. Where land is given by will to husband and wife, they hold by entireties, and the right of survivorship will prevail over any attempted alienation by the husband.

2. An action by a remainderman to recover land cannot be brought during the existence of the particular estate.

3. Where, under the former law, land was left to husband and wife jointly, the husband was entitled to all the products of the land, when severed, *jure mariti.*

4. Where land was devised to a wife, with a proviso that it should remain in the possession of the wife and her husband during their natural lives, and then to descend to the children of the wife ; *Held,* that the husband and wife each took a life estate, and the children a remainder, and that the remaindermen had no right to bring an action to recover the possession until the death of both husband and wife.

(*Motley* v. *Whitemore,* 2 Dev. & Bat., 537 ; *Todd* v. *Zachary,* Busb. Eq., 286; *Long* v. *Barnes,* 87 N. C., 329; cited and approved).

CIVIL ACTION, tried at February Term, 1887, of IREDELL Superior Court, before *Gilmer, Judge,* and a jury.

This action, begun on January 20th, 1886, by the plaintiffs against the defendants, is to impeach certain proceedings heretofore had in the Court of Equity of Iredell county, under the final decree in which, and the deed made by the Clerk and Master pursuant thereto, the defendant, Joseph Simonton, derived title to the land in controversy.

The answer meets all the allegations of fraud and unfair practices in the institution and conducting of the suit to a final determination by a direct denial, and asserts that every thing was done regularly and according to the course of the Court in such cases, and that a good title was acquired by the said Cornelius.

28

The record speaks of issues drawn from the conflicting averments, upon which the jury were empannelled to pass, and in reference to which evidence of opposing tendencies was introduced, while none such are found in the record to enable us to see precisely the matters in dispute. After the testimony was all in, and the argument had progressed to some extent, the Court intimated that the action would not lie during the life-time of said Joseph C, and in submission thereto, the plaintiffs suffered a nonsuit and appealed.

*Messrs. Scott & Caldwell* filed a brief for the plaintiffs.
*Mr. C. H. Armfield,* for the defendants.

SMITH, C. J., (after stating the facts). The land in controversy belonged to one Joseph Byers, who died in 1844, leaving a will, wherein he appoints his two sons-in-law executors, of whom the said Joseph C. alone qualified.

In one of the clauses of the will the testator makes the following disposition of real and personal estate:

"1st. I give and bequeath to my daughter, Jane Julia Simonton, the land I now live upon, composed of two tracts, to-wit, the McKee tract, and the other a State grant, supposed, when united, to contain 440 acres; also the tracts of land called the Kerr tracts, supposed, when united, to contain 301 acres;" also certain slaves and other personal articles specified, concluding the clause thus: "All of which land and negroes and other property mentioned, to remain in the possession of the said Julia Simonton and her husband during their natural lives, and then to descend to the children of the said Julia equally."

In very similar terms the testator gives to his daughter, Margaret Narcissa Smith Irvin, lands, slaves, and other personalty, with a concluding clause of limitation which, *mutatis mutandis.* is in the same words.

The plaintiffs, the children of said Julia, deceased, with

the husbands of the *femes,* sue to vacate and rescind the proceeding in the Court of Equity for fraud, and to recover the possession, and to be adjudged the owners of the land thus attempted to be alienated, and rents and profits accrued since the death of said Julia; while her administrator demands such as accrued before and during the alleged unlawful occupation by the defendant, Jesse Cornelius. Joseph C., the father, is also made a party defendant.

The solution of the controversy seemed to be regarded by the Judge as depending on the construction of the devise quoted, and the title vesting under it, according to its legal interpretation.

Such was his intimation, and as such it was accepted and acted on by the appellants, without reference to the character of the action, as assailing the validity of the suit in which the defendant Jesse claims to have derived the title to the land, at least so far as the plaintiffs parties thereto are concerned.

The ruling in this particular is the only error assigned of which we can take notice in the record.

What, then, is the legal effect of the terms of the devise? The lands are given directly to the daughter Julia, while it is "*to remain in the possession of the said Julia Simonton and her husband during their natural lives,* and then to descend to the children of the said Julia equally."

This language admits of but two possible interpretations, either as giving the full legal estate to the devisee, with trusts in favor of herself and her husband during their respective lives, and then in trust for her own children ; or, as giving the estate to the said Julia and her husband, (the subsequent being explanatory of and restricting the previous words), with a direct remainder after the death of the survivor, to her children.

The latter is, in our view, the true meaning of the testa-

tor, and this benevolence, as reaching the sons-in-law, will be more apparent from other provisions of the will.

It is manifest, that an equal division of his estate was intended to be made by the testator between his daughters, and in his contemplation the sons-in-law were to share in. the benefits.

In furtherance of this object, in the residury clause, the testator, to bring about an equality, requires that his son-in-law, Joseph Simonton, pay over to John Francis Irvin, (his other son-in-law,) the sum of four hundred dollars; and further, should there be found gold mines on any of the devised tracts, that his " two sons-in-law, Simonton and Irvin, be equally sharers in the expenses and profits of the same." None of this burden is put upon the daughters, nor are they to participate in the possible profits to be derived from gold mining, but these provisions are personal to the husbands, and rest upon the community of interest subsisting between them and their wives.

Again, if the husbands are not within the benevolent purview of the testator, and no direct interest is secured to them, it may be asked, as is done in the argument of appellee's counsel with pertenacity and force, why was the name of a son-in-law mentioned at all in connection with the gift? The land and other property was to descend to the children only when *both were dead*, for the possession and use were to be in each when both were living, and necessarily in the survivor during his or her life afterwards for the property could only pass to the children when both lives were terminated.

Treated, then, as a gift to husband and wife, the law declares that they shall hold by entireties, and the right of survivorship will prevail over any attempted alienation by the husband. *Motley* v. *Whitemore*, 2 D. & B., 537; *Todd* v. *Zachary*, Bus. Eq., 286; *Long* v. *Barnes*, 87 N. C., 329.

The husband being still alive, the action of the remainderman is premature in seeking possession.

So, too, the fruits accruing during their joint lives would belong to the husband, when, by separation from the land, they become personal property, *jure mariti*, as when personal goods reduced into possession become his, even when the wife was sole owner, under the law as it then was.

As the plaintiffs have taken a non-suit in deference to the Judge's opinion as to the present state of the title—and in this we approve his ruling—they must abide by the result, and go out of Court. There is no error, and the judgment is affirmed.

Affirmed.