At the October Term, 1888, of NASH, N.W. Boddie recovered judgment by default against Exum Braswell, adjudging him to be the owner and entitled to the possession of the tract of land in controversy. At the Spring Term, 1889, upon a motion to set the judgment aside, it was, by consent, adjudged "that said judgment is so far modified as to (136) declare that the defendant has an equity to redeem the land described in the complaint upon the payment to the plaintiff of six hundred dollars and interest from date, and the cost of this action, on or before the first day of October next, and if this payment is made in full on or before that day the plaintiff will convey the said premises to the defendant, but in case of his failure to make such payment within the time limited the defendant shall stand absolutely debarred and foreclosed of and from any and all equity or other estate or interest in the premises. The former judgment, however, remains in full force so far as it declares that the plaintiff is the owner and entitled to the possession of said land, and if necessary the clerk will issue a writ of possession." Exum Braswell remained in possession until his death, when the defendant, who succeeded to such possession and rights as he had, continued therein until the institution of the action and other proceedings set forth in the transcript. Upon the death of N.W. Boddie his rights in respect to said land vested in the plaintiff. On 14 April, 1900, a civil action was instituted in the Superior Court by Mrs. L. C. Boddie, who then represented the title of N.W. Boddie, deceased, against Exum Braswell. In the complaint filed therein the plaintiff avers ownership in herself and wrongful possession by defendant. At the Spring Term, 1900, judgment by default was entered. At the Spring Term, 1901, the heirs at law of Braswell were permitted to come in and make themselves parties defendant; the judgment was set aside and defendants allowed to file answer. They answer, averring that the judgment of Spring Term, 1889, in the original action, was a final settlement of the rights of the parties, and that the terms thereof were complied with by Exum Braswell, by paying the sum therein adjudged to be due N.W. Boddie. They *Page 131 
also pleaded the ten years statute as a bar to the action. On 29 November, 1901, upon application of the plaintiff, the clerk of the Superior Court of said county made an order directing that a writ of assistance issue upon the judgment of Spring Term, 1889; pursuant (137) thereto such writ was issued to the sheriff of said county, commanding him to eject the defendants from said land and put the plaintiffs in possession thereof. The defendants thereupon made a motion before the said clerk to withdraw said writ, for that more than ten years had elapsed since the rendition of said judgment; that no execution had issued thereon; that no notice had been given of the motion for the issuance of said writ; that the judgment was barred by the statute of limitations. The plaintiffs, respondents to said motion, filed answer to the affidavit upon which the motion was made, admitting the matters of record and denying that the possession of the defendants or their ancestor was or had been adverse to the plaintiffs. The said answer set forth "that the relation established by the judgment (of Spring Term, 1889) between the plaintiff and defendant was that of mortgagor and mortgagee, with the mortgagor in possession and clothed with the right to redeem under said decree of strict foreclosure"; that the heirs of Exum Braswell took subject to the rights of N.W. Boddie. The clerk withdrew the writ, and plaintiff appealed to the judge. The original action and appeal coming on for hearing, by consent the two records were consolidated and heard at the May Term of Nash Superior Court, where judgment was rendered for plaintiffs, to which defendants excepted and appealed. No evidence of payment of the $600 was introduced.
There is nothing in the complaint filed in the action of Fall Term, 1888, to indicate the source or quality of the title of N.W. Boddie. The judgment of Spring Term, 1889, being by consent, is to be construed as any other contract (138) of the parties. It constitutes the agreement of the parties made a matter of record by the court at their request. Gaston, J., in Wilcoxv. Wilcox, 36 N.C. 36, says that a consent judgment "is the decree of the parties." Dillard, J., in Edney v. Edney, 81 N.C. 1, says: "A decree by consent is the decree of the parties put on file with the sanction and permission of the court; and in such decrees the parties acting for themselves may provide as to them seems best concerning the subject-matter of the litigation." Vaughan v. Gooch, 92 N.C. 524. *Page 132 
The judgment is therefore to be construed in the same way as if the parties had entered into the contract by writing duly signed and delivered. The plaintiff, in her answer to the motion to withdraw the execution, contended that the relation established between the parties by the judgment was that of mortgagor and mortgagee, the defendant being the mortgagor in possession. The defendants in this Court make the same contention, while the plaintiff here insists that the judgment established the relation of vendor and vendee, the vendee being in possession. The learned counsel calls our attention to the provision that the plaintiff is declared to be the owner of the land, and upon payment of the amount fixed is directed to convey it to the defendant. This, he insists, excludes the idea that the defendant was the owner and the plaintiff the mortgagee. There is certainly much force in this view. On the other hand the defendant's counsel, in their well-considered brief and excellent oral argument, contend that the declaration that the defendant "has an equity to redeem the land," shows clearly that the relation of mortgagor and mortgagee at that time and theretofore existed between the parties, and not that he was, by the judgment, given such equity; that the judgment was a recognition of the existence thereof. They further insist that the term "equity to redeem" is well defined and applicable to no other relation than that of mortgagor and mortgagee. (139) From this position counsel contend that, notwithstanding the provision in the judgment that upon failure to pay the amount fixed by 1 October, 1889, the defendant shall be forever debarred and foreclosed of any equity, etc., in said lands, the relation continued to exist, and that after default the possession of the defendant continued to be that of mortgagor and not tenant, and that at the end of ten years the plaintiff was barred by subsection 3, section 152 of The Code. This defense is not based upon the idea that the possession of Braswell was adverse to the plaintiff. It is conceded that the authorities cited by plaintiff in her answer to the motion to withdraw the execution sustain the position that the possession of the mortgagor is not adverse to the mortgagee.Parker v. Banks, 79 N.C. 480. The plaintiff contends that after default the defendant was the tenant of the plaintiff at sufferance, and that, until by some unequivocal act on his part, the character of his tenure could not be changed. We do not think that in any aspect of the case the question of adverse possession arises. It has being found difficult to define, satisfactorily, the tenure of the mortgagor in possession. Rodman,J., in Jones v. Hill, 64 N.C. 198, said: "If a mortgagor remains in possession after the forfeiture of the property, he remains only by permission of the mortgagee. In such case the mortgagor has *Page 133 
sometimes been called a tenant at will or sufferance and sometimes a trespasser, but he is properly neither; his position cannot be more accurately defined than by calling him a mortgagor in possession, but he may be ejected at any time by the mortgagee without notice." Do the terms of the judgment of Spring Term, 1889, establish the relation of mortgagor and mortgagee? In discussing the character of an instrument involving the same question Ruffin, C. J., said: "The case is not free from doubt upon the first point. The character of the conveyance is to be determined by the intention of the parties, and if that, however ascertained, was that it should operate as a security, the court so regards it, and the debtor will be entitled to redeem." Gillis v. (140)Martin, 17 N.C. 472.
In Wilson v. Weston, 57 N.C. 349, the deed provided: "The said Wilson shall have the privilege of redeeming . . . by paying the said Weston . . . the said sum of $35, on or before the expiration of six months." Ruffin, J., said: "There may be in some cases much difficulty in distinguishing between a mortgage and a conditional sale; but there are very decisive evidences of the true character of this transaction. The deed of itself imports prima facie a security and not a sale, by the proviso for the privilege of redeeming the negroes, which, between these parties, is equivalent to a technical condition on which an equity of redemption would arise, as denoting the intent of the parties."Mason v. Hearne, 45 N.C. 88; Robinson v. Willoughby, 65 N.C. 520,Rodman, J., saying: "If a transaction be a mortgage in substance, the most solemn engagement to the contrary made at the time cannot deprive the debtor of his right to redeem; such a case being on grounds of equity an exception to the maxim `modus et conventio vincunt legem.'" It is to be regretted that for the purpose of aiding us in construing the terms of the contract or agreement of the parties, as embodied in the consent judgment, we have no evidence or information in regard to the status of the title prior to the judgment of Fall Term, 1888. The defendants, in their affidavit made before the clerk, say that Exum Braswell, their ancestor, owned and had possession of the land since 1833. Whether Mr. Boddie ever owned the land or how he acquired a right to it, or to have $600 paid him as a condition upon which he was to convey it to Braswell, does not appear. The term "right to redeem" is appropriate to express the right, interest or estate of a mortgagor, and not a vendee. When we speak of the interest of one in or right to real estate as an "equity of redemption," which is synonymous with "right to redeem," we understand that reference is made to the status of a mortgagor, not a vendee. We are also impressed with the expression (141) *Page 134 
that the defendant "has a right to redeem"; the language clearly conveys the idea that some such relation, in respect to the land, then existed between the parties. The judgment of Fall Term, 1888, is not inconsistent with the suggestion that the plaintiff's title was not absolute but subject to the right to redeem. The judgment of Fall Term, 1888, and the consent judgment when read together, as they should be, to ascertain the intention of the parties, is consistent with the contention of the defendant. Watkins v. Williams, 123 N.C. 170. The mortgagee is the owner, and in an action for that purpose entitled to the possession of the mortgaged estate. Upon a careful consideration of the terms of the consent judgment in the light of the authorities we are of the opinion that the relation of mortgagor and mortgagee was recognized, or at least established. The plaintiff insists that, conceding this to be true, the judgment expressly declares that upon failure to pay the debt on or before 1 October, 1889, the defendant shall be barred and foreclosed of his right or equity to redeem; that by this provision in the judgment there was a strict foreclosure; that after the day fixed the default of the defendant deprived him of any and all interest in the land. In that view his possession was either adverse, in which case the plaintiff would not be barred until the expiration of twenty years or the possession was permissive, and no length of time would bar the entry of the plaintiff. Treating the judgment as the agreement of the parties, in what respect does it differ from a common law mortgage, in which it is always provided that upon default "the said deed and every part thereof shall remain in full force and effect?" It was to prevent the hardship growing out of the forfeiture wrought by the terms of the deed in a court of law that equity came to the relief of the mortgagor and permitted him to redeem, notwithstanding the forfeiture, by paying the debt (142) within a reasonable time. In this way the right to redeem came into existence, and from this purely equitable right, or right to relief in equity, was evolved the mortgagor's equity of redemption, which came to be and is now recognized as an estate or interest in the land, subject to sale under execution, to dower and many other incidents of a legal estate in land. Courts of equity, for the purpose of preserving without impairment this right to redeem notwithstanding the forfeiture, refused to recognize or enforce agreements, made at the time of the execution of the mortgage, releasing or in any manner depriving the mortgagor of his equity. From this refusal of the chancellors the maxim came into existence, "Once a mortgage always a mortgage," which has been strictly adhered to by the courts in England and this country, so that it is a well-settled doctrine that by no agreement made by the parties can the equity of redemption be destroyed. While in exceptional *Page 135 
cases the Court would render a decree of strict foreclosure, it was only done where it clearly appeared that the rights or interest of the mortgagor were not injuriously affected. Ruffin, C. J., in Gillis v. Martin,supra, after holding that the instrument before the Court was a mortgage, said: "But no agreement at the time of the contract that the purchaser shall, in default of the debtor, become absolute owner even at an increased price, is permitted by the Court to bar redemption, if the subject was once redeemable." The principle is strongly stated by Mr.Justice Field in Peugh v. Davis, 96 U.S. 332: "It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; that is to say, so long as the instrument is one of security the borrower has in a court of equity a right to redeem the property upon payment of the loan. This right cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage. This is a doctrine from which a court of equity never deviates. Its maintenance is deemed essential to the protection of the debtor, who, under pressing necessities, will often submit to (143) ruinous conditions, expecting or hoping to be able to repay the loan at its maturity, and thus prevent the condition from being enforced and the property sacrificed." In Macauley v. Smith, 132 N.Y. 524, Landon,J., said: "The agreement to turn a mortgage into an absolute deed in case of default is one that finds no favor in equity. The maxim `Once a mortgage always a mortgage' governs the case." In Jones on Mortgages, Vol. 1, sec. 251, it is said: "Generally every one may renounce any privilege or surrender any right he has; but an exception is made in favor of debtors who have mortgaged their property, for the reason that their necessities often drive them to make ruinous concessions in order to raise money." This Court has always rigidly enforced the maxim invoked by the defendants.Ruffin, C. J., in Fleming v. Sitton, 21 N.C. 621, speaking of the parties in foreclosure suits, says: "Of late years a beneficial practice has gained favor until it may be considered established in this country not absolutely to foreclose in any case, but to sell the mortgaged premises and apply the proceeds in satisfaction of the debt." Jones on Mortgages, sec. 1538, etseq. Treating the consent judgment as the agreement of the parties, rather than the judicial determination of their rights, we are brought to the conclusion that notwithstanding the provision of strict foreclosure the relation of mortgagor and mortgagee continued to exist between them. The question next arises whether the plaintiff is barred by the statute of limitations. Prior to The Code a presumption of abandonment arose which precluded a mortgagee from maintaining a bill to foreclose a mortgage *Page 136 
after ten years from default, when the mortgagor was permitted to remain in possession, making no payment on the debt, Brown v. Becknall,58 N.C. 423, because, as said by Pearson, C. J., "One who sleeps on his right for ten years either has arranged it in some way or ought to lose it because of his negligence." By section 152, subsection (144) 3, an action to foreclose a mortgage is barred after ten years from the forfeiture, when the mortgagor has been in possession of the property. The condition which formerly raised a presumption of abandonment now constitutes an absolute bar to the enforcement of the mortgage. It would seem, therefore, that the plaintiff can neither have a writ of possession upon the consent judgment nor maintain an action of ejectment for the land. It may be that the plaintiff may be able to show a payment on the debt or other recognition of it, preventing the operation of the statute. The case was heard by his Honor upon the record. The judgment must be reversed and the case remanded with permission to the plaintiff, if so advised, to amend her complaint by asking for a decree of foreclosure by a sale of the property. The defendants may then interpose such defenses as they may be advised, so that the rights of the parties may be settled in accordance with this opinion. It is so ordered.
Error.
Cited: S. c., 142 N.C. 114; Rogers v. Sluder, 148 N.C. 46; Wilson v.Fisher, 148 N.C. 539; Harrison v. Dill, 169 N.C. 545; Holloway v.Durham, 176 N.C. 553; In re Chisholm, ib., 212; Morris v. Patterson,180 N.C. 489.
(145)