BANK OF GLADE SPRING v. S. M. McEWEN ET AL.

(Filed 13 November, 1912.)

1. **Deeds and Conveyances — Husband and Wife — Entireties—Jus Accrescendi.**

   Under a conveyance of land in fee to husband and wife, they take by entireties, with the right of survivorship, and during their lives the lands are not subject to the debts of either, except with the consent of both properly given.

2. **Attorney and Client—Principal and Agent—Consent Judgment—Scope of Authority.**

   The consent of an attorney to a "consent judgment" which materially affects the rights of his client in the subject-matter of the controversy, given without the consent, expressed or implied of his client, is not within the scope of the employment of the attorney, and is not binding upon the client. The principles relating to the scope of an attorney's agency in representing the interests of his client discussed by WALKER, J.

BANK *v.* McEWEN.

### 3. Consent Judgments—Agreement—Void in Toto—Equity.

When it is made to appear that a judgment purporting to be a consent judgment had been entered in a cause, but was not, in fact, consented to by one of the parties, it is error for the court to set so much of it aside as is injurious to the one whose consent had not been obtained, and proceed to adjust the matter by decree which attempts to observe the equities between the parties.

### 4. Same—Attorney and Client.

A judgment entered by the court as a consent judgment is the agreement made by the parties, and when it appears that a party thereto did not consent, but that the judgment had been entered upon the consent of his attorney, without his authority, expressed or implied, of which the other parties to the agreement had actual notice given them at the time, and that the agreements were reciprocal, each a consideration for the other, the party not having consented may by proper proceedings have the consent judgment set aside *in toto.*

### 5. Same.

In an action by a judgment creditor to set aside certain deeds in trust for the payment of a debt executed by husband and wife on lands held by them in entireties, a judgment purporting to be a consent judgment was entered, decreeing that the lands be sold, and the proceeds applied first to the cost of the action, and the balance to the payment of the mortgage debt, then to the payment of judgment creditors, and any surplus to the wife. In proceedings to set aside this judgment on the ground that the attorneys for the husband and wife had consented to the judgment without their knowledge or consent, it appeared that the attorneys had not obtained their client's consent and had given notice thereof at the time the judgment was entered: *Held,* (1) the principles of principal and agent apply to the relationship of attorney and client, and that an attorney has no authority to consent to the relinquishment of his client's property rights in the subject-matter of the controversy without the client's consent; (2) the matters of agreement of the parties, as appeared in the consent judgment, were reciprocal, and each was a consideration for the other, and while the court should have set aside the decree, as a whole, it could not modify it by eliminating the part which had not been consented to and adjust the matter under what appeared to be equitable for all parties.

### 6. Consent Judgments — Fraud — Absence of Consent — Power of Court.

A court has the power to open or vacate a judgment which appears to have been entered by consent or agreement of the parties, on adequate grounds, *e. g.,* fraud or mistake, or the real absence of consent, if so found.

**7. Appeal and Error—Lost Appeal—Equity—Judgment Set Aside— Procedure.**

In this case, it appearing that in proceedings to set aside a "consent judgment" one of the parties had not in fact·consented, and the trial judge, instead of setting aside the "consent judgment," erroneously attempted to adjust the rights of the parties upon equitable principles, and in consequence of the abortive agreement the party appealing has lost his right to prosecute an appeal to the Supreme Court from the verdict, having moved for a new trial in time for that purpose, and the judge having left the district: *Held*, in equity, the judgment and verdict appealed from should be set aside, permitting the parties to come to another agreement, if they are so advised, or start anew from the beginning, and try out the issue of the fraud alleged, to a final decree.

**8. Appeal and Error — Objections and Exceptions — Fraud — Motions—Independent Actions.**

In this case, it appearing that the parties have elected to place the matters involved upon their real merits, without regard to mere form, the Supreme Court has decided the case accordingly; and whether it should have been upon motion or an independent action, no exception or point having been made, *quære*.

APPEAL by plaintiff from *Daniels, J.,* at Spring Term, 1912, of ASHE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*T. C. Bowie for plaintiff.*
*R. L. Ballou for defendant.*

WALKER, J.   This case was brought here by the appeal of the plaintiff from an order upon a motion of the defendants to set aside a consent judgment, and presents the following facts:

Plaintiff, as a judgment creditor of S. M. McEwen, brought an action by the above title to impeach and set aside two deeds of trust, one executed on 16 October, 1909, by S. M. McEwen and his wife, Nannie B. McEwen, to G. L. Park, as trustee, to secure a debt due to W. J. McEwen for $2,500, which amount had been advanced to the plaintiff by said W. J. McEwen at the request and for the benefit of the defendant, S. M. McEwen, and the other executed on 18 October, 1909, by the said S. M. McEwen to T. E. Parker as trustee for the benefit of Nannie B.

McEwen, to secure the payment to her of $2,500, which she had loaned to her husband, S. M. McEwen. Issues were submitted to the jury and answered as follows:

1. Was the deed of trust from S. M. McEwen and wife to G. L. Park, trustee, on 16 October, 1909, made with the intent to hinder, delay, defeat, and defraud the plaintiff? Answer: Yes.

2. If so, did W. J. McEwen have knowledge of said fraudulent intent and participate therein? Answer: Yes.

3. Was the deed of trust from S. M. McEwen and wife to Eugene Parker, trustee, on 18 October, 1909, made with intent to hinder, defeat, delay, and defraud the plaintiff? Answer: Yes.

4. If so, did Nannie B. McEwen have knowledge of the fraudulent intent of her husband, S. M. McEwen, and participate therein? Answer: Yes.

Judgment was entered upon the verdict, to the effect that the deeds of trust should be canceled, and defendant W. J. McEwen having moved in apt time to set aside the verdict to the extent that it affected his interests adversely, and the judge having intimated that he would grant the motion, the plaintiff's and defendants' attorneys agreed, at the suggestion of the court, that the equities of the parties should be adjusted and settled upon the following basis: The issue of fraud as to W. J. McEwen to be set aside and the land described in the deed of trust to G. L. Park to be sold and the proceeds of sale to be applied, first, to the costs of the action, and the balance to the payment of the debt for $2,500 due to W. J. McEwen, and then to the payment of the judgment creditors, and any surplus to be paid to Nannie B. McEwen. This agreement was inserted in the consent judgment, which was signed by *Judge Lyon* and the attorneys of the respective parties at Fall Term, 1911. This judgment was entered without the knowledge or consent of Mrs. Nannie B. McEwen or her husband, and without any authority given by them, or either of them, to their attorneys to consent to the judgment, and really against their consent. These defendants, after having successfully applied for an injunction

to *Judge W. J. Adams,* moved before *Judge F. A. Daniels,* at Spring Term, 1912, to set aside the consent decree because they had not, in fact, agreed thereto, and had given no authority to their attorneys to do so. *Judge Daniels* found and stated the facts in his judgment upon the motion, and among others, that the attorneys acted without authority; but instead of setting aside the judgment *in toto,* he modified it by striking out so much of it as directed that a part of the proceeds of the sale of the second tract of land be applied to the payment of the judgment creditors of S. M. McEwen, and then proceeded to order a sale of the land first described in the deeds of trust, for the purpose of paying the costs and the debt of $2,500 due to W. J. McEwen, and if the proceeds of that sale should prove insufficient for the designated purpose, then that the tract last described should be sold to pay any balance due, with a direction that the surplus, if any, should be paid to S. M. McEwen and wife, Nannie B. McEwen. Plaintiff excepted to this judgment, and appealed.

The learned judge was manifestly right in holding that so much of the alleged consent judgment, signed by *Judge Lyon,* as did not receive the consent of the defendants S. M. McEwen and wife, Nannie B. McEwen, and which prejudiced their rights, was not binding upon them; but instead of amending or reforming the judgment, he should have set it aside altogether. It appears that the defendants McEwen and wife held the land by entireties, and it is insisted by their counsel that it could not be sold to pay the judgment creditors of the husband, unless with the consent of both, and only to the extent that they had encumbered it, and the court could not sell it without their consent, which was not given. They rely on *Bruce v. Nicholson,* 109 N. C., 202, where it was held by this Court: "Under a conveyance of land in fee to husband and wife, they take, not as tenants in common or joint tenants, but by entireties with the right of survivorship, each being seized *per tout et non per my;* neither can convey or encumber the estate without the assent of the other, nor can the interest of either become subject to the lien, or any proceeding to sell for the satisfaction of any judgment during their joint lives. . . . The nature of this estate

forbids and prevents the sale or disposal of it, or any part of it, by the husband or wife without the assent of both; the whole must remain to the survivor. The husband cannot convey, encumber, or at all prejudice such ·estate to any greater extent than if it rested in the wife exclusively in her own right; he has no such estate as he can dispose of 'to the prejudice of the wife's estate. The unity of the husband and wife as one person, and the ownership of the estate by that person, prevents the disposition of it otherwise than jointly. As a consequence, neither the interest of the husband nor that of the wife can be sold under execution so as to pass away title during their joint lives, or as against the survivor after the death of one of them. It is said in Rorer on Judicial Sales, that 'No proceeding against one of them during their joint lives will, by sale, affect the title to the property as against the other one as survivor, or as against the two during their joint lives. Neither party to such tenancy can sell or convey his or her interest, for it is incapable of being separated.' He cites many authorities to support what he thus says. Indeed, it seems that the estate is not that of the husband or the wife; it belongs to that third. person recognized by the law, the husband *and* the wife. It requires the coöperation of both to dispose of its effectually. Rorer Judicial Sales, sec. 549; Freeman Cotenancy, secs. 73, 74; 4 Kent, 362; *Simonton v. Cornelius,* 98 N. C., 433." The law, as thus stated, may be subject to some qualification not applicable to the facts of this case, and, therefore, not considered. The principle of law as to an estate by entireties is merely noticed to show that, in this case, the Court could not sell the land held in entireties, except under the deeds of trust, without the consent of defendants, as that matter was not involved in the suit. It amounted to illegal sequestration.

It is found by *Judge Daniels* that defendants McEwen and wife never consented to the judgment, and that counsel had no authority to consent for them. This was known to plaintiffs at the time the consent judgment was entered, for it was stated in open court by defendants' counsel that they had not consulted with their clients in regard to the proposed consent judgment, as they lived at a great distance, in Tennessee, and there

was no chance of doing so. Where the relation of attorney and client exists, the law of principal and agent is generally applicable, and the client is bound, according to the ordinary rules of agency, by the acts of his attorney within the scope of his authority. 4 Cyc., 932.

The power of an attorney with reference to the release of his client's interests is fully considered in *Hall v. Presnell,* 157 N. C., 290, and we therein said: "As said in *Bank v. Hay,* 143 N. C., 326: 'There is a general rule that, when one deals with an agent, it behooves him to ascertain correctly the scope and extent of his authority to contract for and in behalf of his alleged principal, for under any other rule, it is said, every principal would be at the mercy of his agent, however carefully he might limit his authority. The power of an agent is not unlimited unless in some way it either expressly or impliedly appears to be so, and the person who proposes to contract with him as agent for his principal should first inform himself where his authority stops or how far his commission goes, before he closes the bargain with him. *Biggs v. Insurance Co.,* 88 N. C., 141; *Ferguson v. Manufacturing Co.,* 118 N. C., 946.' No one could reasonably suppose that it was within the scope of an attorney's authority to release a debt or any party to a note, or to do anything which would have that effect, when his commission extended only to the collection of the debt. It is stated in the books that an attorney has no implied authority to work any discharge of a debtor but upon actual payment of the full amount of the debt, and that in money. He cannot release sureties or indorsers nor enter a *retraxit,* when it is a final bar (*Lambert v. Sanford,* 3 Blackford, 137), nor release a witness (*Ward v. Hopkins,* 2 Pen. (N. J.), 689; *Campbell v. Kincaird,* 3 Mon., 566), nor a party in interest (*Succession of Wright,* 18 La. Ann., 49). It is a general rule that an attorney, who in many respects is considered as a mere agent, cannot waive any of the substantial rights of his client without the latter's consent, and in such a case he is not barred thereby, without ratification, or something which amounts to an estoppel, to deny his attorney's authority. These principles will be found to be sustained by the following authorities: Weeks on Attorneys,

sec. 219, and cases cited in the notes; *Savings Inst. v. Chinn,* 70 Ky. (7 Bush.), 539; *Ireland v. Todd,* 36 Me., 149; *Givens v. Briscoe,* 3 J. J. Marsh (Ky.), 529; *Union Bank v. Goran,* 10 Sm. and M. (Miss.), 333, and cases cited; *Tankersley v. Caruth,* 2 S. C. (4 Des. Eq.), 44; *Terhune v. Cotton,* 10 N. J. Eq. (2 Stock. Ch.), 21."

In *Savory v. Chapman,* 39 E. C. L., 242 (11 Ad. Ell., 829), *Justice Patteson* lays down the law upon this subject very clearly and succinctly, and what is stated in the same case by *Justice Coleridge* is so appropriate to the facts in our record that we quote it as he said it: "A party is bound to know the legal qualifications of persons filling certain employments. The question, therefore, turns on the authority of the attorney; and there is nothing here to show that he had any, either in his general character or with reference to the circumstances of the suit. He could, as it appears here, be only an agent *de facto;* and there is nothing shown to make him one for the present purpose." It seems, therefore, to be the generally accepted doctrine that an attorney charged with the collection of a debt, has no power, in virtue of his general authority, to do any act which will either release his client's debtor or his surety, nor can he materially jeopardize his client's interest in any way. An attorney at law is an officer in a court of justice, who is employed by a party in a cause to manage the same for him (4 Cyc., 897), and his client is concluded by his acts done within the range of his authority. "An attorney's authority is not limited to the mere prosecution of the suit, but extends to everything necessary to the protection and promotion of the interests committed to his care, so far as they are affected by proceedings in the court where he represents his client." 4 Cyc., 934, and cases cited. An attorney cannot compromise his client's case without special authority to do so, nor can he, without such authority, receive in payment of a debt due his client anything except the legal currency of the country or bills which pass as money at their par value by the common consent of the community. A subsequent ratification of the acts of the attorney is equivalent to a special authority previously granted to do those

acts, but it must be the ratification of the client himself and not of his agent. *Moye v. Cogdell,* 69 N. C., 93, headnote.

In *Alspaugh v. Jones,* 64 N. C., 32, where the question of authority from client to attorney, and the extent of that authority, was before the Court, *Justice Settle,* in writing the opinion of this Court, said : "His Honor should have left it to the jury to say whether or not he was the attorney of the plaintiff; and if he was, it was for them to find how far his authority extended."

An attorney may submit his client's cause to arbitration without his knowledge or consent, as this is one of the modes of trial, and the client's assent to it is implied, and if it is wrongfully done, the client's remedy is an action against the attorney for damages (*Thomas v. Hews,* 2 C. & M., 327) ; but he cannot compromise his client's case without his authority. *Halker v. Parker,* 7 Cranche, 436. These principles were approved and applied in the leading case of *Morris v. Grier,* 76 N. C., 410, which cites in support of them, *Jenkins v. Gillespie,* 10 Smedes and Marsh (Miss.), 31; *Rex v. Hill,* 7 Price, 630; *Moye v. Cogdell, supra; Thomas v. Hews, supra; Buckland v. Conway,* 16 Mass., 396; *Halker v. Parker, supra.* "Although counsel has complete authority over the suit, the mode of conducting it, and all that is incident to it, such as withdrawing the record, withdrawing a juror, calling no witnesses, and other matters which properly belong to the suit, and the management and conduct of the trial, he has not, by virtue of his retainer in the suit, any power over matters which are collateral to it." *Pollock, Ch. Baron,* in *Swinfen v. Chelmsford,* 2 L. T., N. S., 406.

Mr. Weeks says an attorney, in the management of a suit, has a very extensive authority, which springs from his general retainer. He has the free and full control of a case, in its ordinary incidents, and to this extent he is not bound or required to consult his client (section 220), and that an agreement to refer the cause, or to arbitrate, comes within the scope of the attorney's general authority, the weight of authority being to the effect that he cannot compromise his client's interests, citing *Halker v. Parker, supra,* in which *Chief Justice Marshall,* delivering the opinion, said that the client is not bound by a com-

promise made by his attorney without his consent, and the compromise and judgment entered therein in that case was of no effect, as the attorney had exceeded his authority. Weeks on Attorneys, sec. 228, p. 398. But he is clear that the general authority of an attorney, under his retainer, does not include the power to sell or release his client's property. He must have special authority or instructions for that purpose. Weeks, sec. 219.

Having settled this question as to the scope of an attorney's authority, and remarking that in this case plaintiff had notice that they did not profess to act with special authority to agree to a sale of the land held by entireties, we proceed to a consideration of the next and last question.

The court had the power to set aside the decree, as a whole, but not to eliminate from it that part only which affected the defendants McEwen and wife, prejudicially. The agreements of the parties were reciprocal, and each was the consideration for the other. If you take out what hurts the said defendants, what is left is not what was agreed to. The plaintiff might well say, "I made no such contract" (*non hœc in federa veni*). Besides, the supposed voluntary relinquishment by defendants of their land to sale formed the consideration for plaintiff's release of certain of its rights. Equity and common fairness, therefore, demand that the entire decree be vacated. We said in *Massey v. Barbee,* 138 N. C., 84: "He must abide by that judgment, as it was written with his consent. The court cannot change it, but can only construe its provisions. We find no expression in the judgment indicative of such an understanding, and there is no rule of law by which we are authorized to read it into the contract of the parties, or by construction to give the latter a meaning which its words will not warrant. We have no more right to construe the agreement of the parties contrary to its spirit and intent than we have to vary or modify its terms without the consent of the parties. The rights of the parties must be determined solely by the judgment to which they have assented. The law will not even inquire into the reason for making the decree, it being considered in truth the decree of the parties, though it be also the decree of the court, and their

will stands as a sufficient reason for it. *Wilcox v. Wilcox,* 36 N. C., 36. It must therefore be interpreted as they have written it, and not otherwise." In that case we relied on what is so clearly stated by *Justice Dillard,* one of the best of our chancellors and judicial writers, in *Edney v. Edney,* 81 N. C., 1, to this effect: "A decree by consent, as such, must stand and operate as an entirety or be vacated altogether, unless the parties by a like consent shall agree upon and incorporate into it an alteration or modification. If a clause be stricken out against the will of a party, then it is no longer a consent decree, nor is it a decree of the court, for the court never made it." The same was substantially said in *Vaughan v. Gooch,* 92 N. C., 524, also cited in *Massey v. Barbee:* "The judgment, or, as it is termed, the decree, is by consent the act of the parties rather than (the act) of the court, and it can only be modified or changed by the same concurring agencies that first gave it form, and whatever has been legitimately, and in good faith, done in carrying out its provisions must remain undisturbed." "If a judgment has been irregularly entered, or fails to contain all that is essential to it, or to express the true sentence of the court, in consequence of clerical errors or omissions, it may be completed by an order *nunc pro tunc,* or may be set aside and the true and correct judgment entered *nunc pro tunc.* The power to order the entry of judgment *nunc pro tunc* cannot be used for the purpose of correcting errors or omissions of the court. This procedure cannot be employed to enter a judgment where the court wholly failed to render any judgment at the proper time, or to change the judgment actually rendered to one which it neither rendered nor intended to render, or where the fault in the original judgment is that it is wrong as a matter of law, or to allow the court to review and reverse its action in respect to what it formerly refused to do or assent to." 23 Cyc., 843, 844.

The correct procedure is stated in *Aronson v. Sire,* 85 N. Y. App. Div. (1903), page 607: "An interlocutory judgment, in strict accordance with a stipulation entered into between the parties, cannot be amended on a motion made by one of the parties and opposed by the other; the remedy of the party objecting to the form of the judgment is to make a motion to

be relieved from the stipulation and to have the judgment
vacated." A court has the power to open or vacate a judgment
which appears to have been entered by consent or agreement
of the parties, on adequate grounds, *e. g.,* fraud or mistake or
the real absence of consent, if so found, but it cannot alter or
correct it except with the consent of all the parties affected by
the judgment. 23 Cyc., 733. In the case of *Foley v. Gatliff,*
43 S. W., 190 (19 Ky. L. Rep., 1103), a special judgment was
vacated because entered with the consent of an unauthorized
attorney, but it was entirely set aside, and not only in part and
to the detriment of one of the parties. He who asks equity
must do equity. The court will not award relief for the de-
fendants to the prejudice of their adversary, who has, at least,
an equal equity.

The authorities cited by plaintiff's counsel, to the effect that
a consent order cannot be vacated except by consent of all the
parties, are not in point, as in them the attorneys were only
exercising their ordinary functions in the prosecution or de-
fense of the suits, and were not giving away their client's rights,
which were not involved therein, being entirely collateral. The
very nature of the transaction here was notice to the plaintiff
of a lack of authority in the attorney, and, moreover, the plain-
tiff had actual notice of it, as the judge finds. Besides, in the
cases cited by counsel for plaintiff, it was assumed, or was the
case, that consent had actually been given, and the attempt was
to amend the agreement, or, ignoring or repudiating the con-
sent, to vacate it. Such was the fact in *Stump v. Long,* 84
N. C., 616; *McEachern v. Kerchner,* 90 N. C., 177. In *Henry
v. Hilliard,* 120 N. C., 479, the consent to the order was the
exercise of one of the inherent rights of the attorney and within
the general scope of his authority under his retainer. It related
to the proceedings in the cause. The case of *Ladd v. Teague,*
126 N. C., 544, which has been called to our attention, stands
upon the same footing. It was there a waiver of a jury trial
and a consent "that the judge might find the facts and adjudge
upon them according to the law." It rests upon the same princi-
ple as the attorney's power to consent to a reference, and relates
to a question of practice or procedure. The attorney is intrusted

with the management of the case, and his authority, in this respect, is, as a general rule, plenary. As to all matters coming legitimately within its scope, he represents his client fully, and the latter is bound by his acts simply because he has clothed him with this general authority. In *University v. Lassiter,* 83 N. C., 38, the attorney appeared officiously, and his ostensible client could not take advantage of his opponent in the suit or of persons who acquired rights upon the faith of his act, if he was solvent and responsible. But in our case, plaintiff, as we have said, was forewarned, and can raise no such question.

Defendant contends that the judgment can be modified in part, and reasons substantially in this wise: "If it is found as a fact that an error has been committed, along with an act of right, then are we required to undo the righteous act in order to correct the evil? The idea that a court cannot correct its mistakes is too antiquated to admit of argument. This question was ably fought out during the reign of James I. of England, when equity first began to exercise the power to set aside and modify judgments at law. In that great controversy Lord Coke defended the time-honored practices of the courts of law, while Lord Ellesmere defended the advanced idea of giving to the courts of equity the right to set aside or to modify judgments of law. In that well-fought legal battle, equity won (and we add, as all good causes should win), and its protecting arm has ever since been thrown around unfortunate litigants. 1 Story's Eq., sec. 51; Spence Chanc. Jur., p. 674." But the authorities, *supra* and others cited, refer to ordinary judgments *in invitum,* and not to those rendered by consent. If the Court should withdraw an essential part of the judgment, which was entered by consent, it would surely destroy the agreement, and this it has no power to do. As *Judge Gaston* said in *Wilcox v. Wilcox,* 36 N. C., at p. 41, we can very well understand the propriety of the Court refusing to rehear a decree rendered by consent, because it is, in truth, a decree of the parties, and in such a case their will is a sufficient reason for it (*stat pro ratione voluntas*). The court takes no part in the formation of the consent, but merely enters its decree in conformity therewith. But before there can be such a decree, it is absolutely

necessary that there should have been a previous consent of the parties to be affected thereby. This constitutes the authority of the court to enter its decree, and is the essential basis of its action. *Chief Justice Smith,* in the case of *Vaughan v. Gooch,* 92 N. C., 524, recognizes the principles herein stated, and discusses them at length, as does the Court in *McEachern v. Kerchner,* 90 N. C., 177.

What judgment to render here, presents a more serious and difficult problem, but we have concluded that as by the abortive agreement the defendants have lost their right to prosecute an appeal to this Court from the verdict, having moved for a new trial in due time for that purpose, and the judge having left the district, the only equitable thing left for us to do is to set aside the verdict and judgment, in analogy to those cases where some accident, *e. g.,* loss of papers, has thwarted the appeal. The parties can give a fresh consent, or can start anew from the beginning and try out the issue of fraud to a final lecree. It is, therefore, ordered that the judgments of *Judge Daniels* and of *Judge Lyon* be set aside, and also the verdict, and that the case stand for trial upon the issues joined between the parties.

We have not adverted to the form of the proceeding, as being a motion and not an independent action, as no point was made in respect to it, and we are not, therefore, called upon to express any opinion in regard to it. We consider that the parties have elected to place the decision upon the real merits of the controversy, without regard to mere form, so that their rights may the more speedily be determined. It is not intended to intimate that a motion is not the proper remedy.

We are indebted to counsel for their excellent briefs, filed in the cause, which exhibit unusual ability and research, and have been of great utility to us in the investigation of the important questions involved.

We must declare that there was error in the proceedings and judgment of the court below.

Error.