JERRY COX and Wife, LOUISA COX, v. ALBEMARLE DRAINAGE DISTRICT, BEAUFORT COUNTY DRAINAGE DISTRICT, No. 5, and JOHN L. ROPER LUMBER COMPANY.

(Filed 7 March, 1928.)

**1. Drainage Districts—Liabilities and Rights of Parties Under Consent Judgment Made in Its Formation.**

A consent judgment entered in the forming a statutory drainage district with regard to the cutting and maintaining drainage ditches, in connection with ditches to be maintained by owners of the land partly lying within and partly without the district is to be interpreted as the contract of the parties, and binding upon the owners of the land included within the district thus formed.

**2. Same.**

Where by the terms of a consent judgment entered into by the proper authorities of a drainage district being formed with certain owners of land partly lying within and partly without the district, it is set forth that such owners maintain ditches upon their outside lands flowing into those of and within the district, upon certain conditions as to the flowing

of the water, and the district is thus formed, other owners of the land may not recover damages to their land against those who have constructed the outside ditches upon their own land, when a different remedy is provided in the consent judgment.

APPEAL by plaintiff from *Midyette, J.,* at October Term, 1927, of BEAUFORT. Affirmed.

There were nine actions, consolidated by consent, brought against defendants as joint *tort-feasors,* alleging damage for flooding plaintiffs' land, sobbing and souring the land, and destroying the crops.

Louisa Cox, the plaintiff, wife of Jerry Cox, is the owner of 53 acres of land situated within the boundaries of Pantego Drainage District. That while said district was in process of being created under chapter 442, Public Laws 1909, C. S., ch. 94, on 1 February, 1910, the following agreement was made a part of the project and set forth in the decree:

"Now, therefore, by consent of all parties to this proceeding and with the approval of the board of viewers, it is admitted and decreed by the court that all lands owned or claimed by said J. L. Roper Lumber Company, by the Manhattan Trust Company and by the Norfolk Southern Railway Company, which are or may be within the boundaries of the proposed drainage district, as described either in the petition or preliminary report heretofore filed be and the same are hereby expressly excluded and eliminated from the said district, and the said J. L. Roper Lumber Company, the Manhattan Trust Company and Norfolk Southern Railway Company, their successors and assigns are declared unnecessary as parties to said proceeding and as to them, but not otherwise, the same is dismissed *upon condition,* however, which by consent is made a condition precedent, as aforesaid, that said J. L. Roper Lumber Company will, at its *own proper cost* and *expense construct* and *hereafter maintain the canal* or *intercepting ditch* extending from Cuckold's Creek north to Station 135-00 (as shown and indicated on the map of the Pantego Drainage District as surveyed in 1909, and prepared under the supervision of the Bureau of Drainage Investigation of the United States Department of Agriculture, a copy of which is herewith filed), and thence running westward with the boundaries of the proposed district as described in the aforesaid preliminary report to Station 589-00, which said canal shall be constructed and so maintained of the width and depth as provided in the map accompanying the map so made under the supervision of said Bureau of Drainage Investigation by J. O. Wright, Supervising Drainage Engineer, a copy of which is also filed herewith, and in accordance with his recommendations as to the size and capacity thereof, *so that it shall be at all times in good serviceable condition for the purposes intended* and so long as the said Pantego Drainage District may be continued and maintained under the law; and upon the further

condition that, if at any time the said *intercepting canal shall, through the failure or default of the said J. L. Roper Lumber Company to maintain the same become so impaired or obstructed as to lessen or diminish its carrying capacity 25% or more,* then the commissioners of said drainage district shall serve a written notice to that effect, either upon the president of the said J. L. Roper Lumber Company or upon such other person as may be designated by it under the law upon whom the process may be served, and within sixty days after the receipt of such notice the said company shall proceed to repair the said canal and restore the same to its former capacity according to the original plans so that the same shall be put in good serviceable condition for the purpose intended, and repairs shall be commenced within a reasonable time, and if in case the said company shall fail or neglect within the period of sixty days after the receipt of such notice to begin in *good faith the work of repair upon the intercepting canal,* then the drainage commissioners of said district shall on their part have the right to enter and undertake the said repairs to the extent which may be then actually necessary, and that, in behalf of said district, may recover from said company the amount of money by them necessarily expended in making such repairs, and the amount so necessarily expended by said drainage commissioners in making such repairs shall constitute the measure of damages against the said company, its successors or assigns in case of such default or failure on its part, or their part, and no other or greater damages shall be recoverable on that account."

It is further provided that the Pantego Drainage District shall "construct and maintain" certain canals and the duties "shall be reciprocal." It is further provided that the J. L. Roper Lumber Company and Norfolk & Southern Railway Company lands, originally in the district, can drain their lands into the intercepting canal, and the J. L. Roper Lumber Company lands, contiguous, into Pantego Drainage District canals.

The defendant, J. L. Roper Lumber Company, constructed the intercepting canal some 12 miles in length, and Pantego Drainage District constructed its canals, and both in accordance with the decree.

The other necessary facts will be set forth in the opinion.

*Harry McMullan and H. C. Carter for plaintiffs.*
*S. C. Bragaw and Small, MacLean & Rodman for John L. Roper Lumber Company.*

CLARKSON, J. The defendant, J. L. Roper Lumber Company, made a motion in the court below for judgment as in case of nonsuit, which was allowed. C. S., 567. Upon the record we think this was correct. The plaintiffs then submitted to judgment as in case of nonsuit against

the Albemarle Drainage District, on the ground that if a judgment could be obtained it would be uncollectible on account of insolvency.

The land of the plaintiff, Louisa Cox, is in the Pantego Drainage District. She is bound by the decree made in the proceeding establishing the Pantego Drainage District. It appears that the J. L. Roper Lumber Company has constructed the intercepting canal some twelve miles, and the Pantego Drainage District its canals, both in accordance with the decree. Under the terms of the decree J. L. Roper Lumber Company contracted, at its own proper cost and expense, to "hereafter maintain the canal or intercepting ditch." It is provided in the decree "if at any time the said intercepting canal shall, through failure or default of the said J. L. Roper Lumber Company to maintain the same, become so impaired or obstructed as to lessen or diminish its carrying capacity by 25% or more, then the commissioners of said drainage district shall give certain written notice to J. L. Roper Lumber Company to perform its agreement and, upon failure, the drainage commissioners shall do so and recover the cost in making the repairs. The evidence on the part of plaintiff is plenary as to her land being soured, sobbed and flooded, and crops destroyed, but she is bound by the decree. If for any cause the intercepting canal becomes so impaired or obstructed as to lessen or diminish its carrying capacity by 25% or more, since its construction under the decree, it is the duty of the drainage commissioners to take prompt action and protect plaintiff's land from future damage. If the intercepting canal's carrying capacity is increased 25% or more since its original construction by other canals emptying into it, the obligation is on the J. L. Roper Lumber Company to fulfill its agreement, and dig it deeper and wider, or otherwise comply with its contract so as to relieve this additional burden. The Pantego Drainage District is not bound by any agreement made by J. L. Roper Lumber Company, and the Albemarle Drainage District or any other corporation, person or persons to "appropriate" the intercepting canal for its or their use so as to diminish the carrying capacity of the intercepting canal 25% or more.

In *Distributing Co. v. Carraway,* 189 N. C., p. 423, it is said: "The judgment before us being a 'consent judgment,' is to be construed as if the parties had entered into a written contract, duly signed and delivered, embodying therein the terms of said judgment. *Bunn v. Braswell,* 139 N. C., 135," citing authorities. *Bank v. Mitchell,* 191 N. C., 190; *Lentz v. Lentz,* 194 N. C., 673.

For the reason given, the judgment of the court below is
Affirmed.