## TAYLOR vs. READ.

Where the decree of a vice chancellor settles the rights of the parties and disposes of the general costs of the cause, and also contains the consequential directions for carrying the decree into effect upon the coming in and confirmation of the report of a master, to whom a reference is directed to ascertain the amount to be paid, it is, substantially, a final decree, although the case is subsequently brought before the vice chancellor, upon exceptions to the report; and an appeal from a decretal order, allowing or disallowing such exceptions, will not authorize the chancellor to reverse or alter the original decree of the vice chancellor.

Upon the allowance of an exception to a master's report, as to the amount of damages sustained, the court can modify the report, and settle the amount, without referring it back to the master.

Where a complainant, in a court of equity, claims a compensation in damages for the non-fulfilment of a contract which has been in part performed, the benefit received by him from such part performance will be allowed to the defendant, in estimating the damages of such complainant.

The proper measure of damages, for the breach of a contract for the delivery of goods, on sale, to be paid for when delivered, and where no part of the goods have been received, is the difference between the contract price and the actual value of such goods at the time they should have been delivered, and the interest upon such difference.

Where particular articles of property are to be delivered within a limited period, to be applied for specific purposes, and not for general merchandise, the party who fails to perform his contract to deliver the articles, is bound to make good the loss occasioned by his delinquency; but he is only liable for direct damages, which, according to the nature of the case, may be presumed to have resulted from his failure to perform the contract, and not for remote or speculative damages.

If a party, entitled to the benefit of a contract, can protect himself from a loss, arising from a breach thereof, by reasonable exertions or common prudence, and he fails to do so, he will not be permitted to throw the loss, which has arisen from such neglect, upon the other contracting party.

Where the defendant contracted to deliver a certain number of saw-logs at a specified price, to be paid for on delivery of the whole, and only a part was delivered, but not paid for, and the contract price of those delivered was more than the difference in value between the residue of the logs and the contract price thereof: *Held*, that the complainant was only entitled to nominal damages, for the non-performance of the contract as to the delivery of the residue of such logs.

THE bill in this cause was filed for the purpose of enforcing a lien upon a land contract, given by Sir J. L. Johnstone to R. Topping, which by divers assignments afterwards came to

September 16.

Hannah, the mother of Hudson Topping. The contract was pledged to the complainant to secure the performance of an agreement with him by Hudson Topping for the delivery of 500 saw-logs, at his saw-mill, and was afterwards assigned to the defendant Read, by Hannah Topping. The cause was heard before the equity court of the sixth circuit upon pleadings and proofs. And in March, 1830, the vice chancellor of that circuit made a decree therein, in favor of the complainant, by which his lien upon the land contract, to the extent of his damages for the non-performance of the agreement for the delivery of the saw-logs, was established. That decree directed a reference to a master to ascertain and report the amount of the complainant's damages for the non-performance of that agreement; in estimating which damages, however, the master was directed not to take into consideration the payments which had been made to Hudson Topping thereon, unless it should be made to appear, by the proofs before the master, that Hannah Topping knew of and assented to such payments. The master was also directed to ascertain and report the amount, if any, which Read had paid on the land contract, over and above the rents and profits of the premises; deducting from such rents and profits the value of improvements made by him upon the land. It was further decreed, that upon the coming in and confirmation of the report, the defendant Read, within ten days after he had notice of the same, might elect to pay the damages reported due on the agreement for the logs; and that in default of such election, or of the payment of such damages within thirty days thereafter, he should release to the complainant the land contract, and all his interest in the premises therein described, upon the payment to him by the complainant of the amount, if any, of his payments on the contract over and above the rents and profits, as ascertained by the master's report. And that neither party should recover costs as against the other.

Under this decree, the master reported that the damages, which the complainant had sustained by the non-performance of the contract, for the delivery of the logs, were six cents only; that the defendant Read was not entitled to any thing for improvements on the land; and that the rents and

profits of the premises exceeded the amount paid by Read on the contract, in the sum of $30,76. He also reported that Hudson Topping had delivered to the complainant 160 logs, but not such as were described in the contract; and that in estimating the damages, the master had not taken into consideration the sum of $200 paid to Hudson Topping on the contract, because the evidence was not sufficient to satisfy him that any part of the payment was made with the knowledge and assent of his mother. To this report, the complainant filed two exceptions : *First.* That the report was erroneous in fixing the damages at the nominal amount of six cents, whereas the complainant insisted that the master should have allowed at least $500 for such damages : *Second.* That the master had erred in not taking into the estimate of damages the monies paid to Hudson Topping on the contract; the complainant, by his exceptions, insisting that it was proved before the master that the mother knew of and assented to the payment. Upon the hearing of these exceptions before the vice chancellor, in October, 1831, he decided that the master was right in disregarding the payment; but that, on the other hand, the delivery of the 160 saw-logs was to be disregarded, except so far as it went to reduce the whole number of logs which were to be delivered on the contract. A decretal order was therefore made, referring it back to the master to ascertain and report the damages of the complainant for the non-delivery of the remaining 340 saw-logs; disregarding the payment of the $200 paid by the complainant to Hudson Topping, and disregarding the value of the 160 logs delivered by him. Under these instructions, the master again reported that the damages of the complainant were merely nominal. Upon exceptions to this report, the vice chancellor overruled the decision of the master; and on the testimony taken on the reference, and certified by the master, the damages of the complainant were fixed at $338,77. And a final decree was thereupon made, in conformity with the original decree of March, 1830. From this decree, fixing the amount of the damages and providing for the carrying the original decree into effect, the surviving defendant, Read, appealed to the chancellor.

*Henry Welles,* for the complainant. The first decree can-not be questioned on this appeal. (*Townsend* v. *Graves,* 3 *Paige,* 458. *Kane and others* v. *Whittick,* 8 *Wendell,* 219.) That decree was authorized by the pleadings and proofs. The contract for the purchase of the premises in question pass-ed to the complainant by way of mortgage, by either the as-signment of Hudson Topping or of Hannah Topping. The as-signment of Hannah Topping to the complainant was previ-ous to her assignment to the defendant Read; and of which Read had notice at the time of the assignment to him. The assignment from Hannah Topping to the complainant, al-though lost, is established by the proofs. The assignments from Hudson and Hannah Topping to the complainant ope-rated as an equitable mortgage. (*Henry* v. *Davis,* 7 *John. Ch. Rep.* 4.) The vice chancellor had the power to correct and modify the report of the master. The reference to a master is only to inform the conscience of the court. The rule of damages is the value of the logs at the time and place appointed for their delivery, deducting the contract price. The complainant ought to be allowed not only his general costs in the suit, but his costs on the appeal. (3 *Paige,* 458.)

The defendants cannot take the objection that Hannah Topping is discharged from her assignment to the complain-ant, as to her interest in the land contract, by a subse-quent modification of the contract between the complainant and Hudson Topping relative to the saw-logs having been made without her consent, as this objection is not taken in the defendants' answer. (*James* v. *McKernan,* 6 *John. Ch. Rep.* 543.) But there was no modification of the contract. The complainant merely extended to Hudson Topping some indulgence as to the time of fulfilling his contract; which agreement for indulgence was not binding on the complain-ant, and might have been revoked by him at any time. Sure-ties are discharged only where the creditor, by an agreement binding on himself, extends the time of payment by the debt-or, or where he omits to enforce the collection of his debt when requested by the surety. (7 *John. Ch. R. Index,* 242. 2 *John. Ch. R.* 554. 17 *John. R.* 384.) It was not necessary to make the proprietors of the Pulteney estate parties.

*Z. A. Leland,* for the defendants. The decree of the vice chancellor was bad, even if the report of the master was erroneous. There should have been another reference to the master. The report of the master was correct. No actual damages were shewn before the master. The proper measure of damages in such a case is the difference between the price agreed upon, and the actual worth of the labor in furnishing the property. (*Dey* v. *Dox,* 9 *Wendell's Rep.* 129, 35. *Clark* v. *Pinney,* 7 *Cowen,* 681. *Shepard* v. *Hampton,* 3 *Wheaton,* 200. *Woodworth* v. *Curtiss,* 7 *Wendell,* 112.) No rule of law or equity was violated by the master, and his discretion cannot be questioned by the court. He should be allowed the same powers of discretion as a jury on a *quantum damnificatus,* particularly as this was a fit case for a jury. If the last point is correct, the suit should be dismissed with costs, on confirming the master's report, as being beneath the jurisdiction of the court. (4 *John. Ch. Rep.* 183. 5 *Id.* 276. 1 *Hopk.* 112, 119.) After the master's report in such a case, it is in time to move for the dismissal of the bill, as the amount of damages could not be ascertained before. (*Cooper's Eq. Pl.* 166. 2 *Atkyns,* 253.)

The chancellor's and vice chancellor's court being one and the same, and the chancellor, on an appeal from the final decree, being required by statute to make any other order in the cause which justice may require, besides annulling, modifying or altering the decree appealed from, it would seem to have been the intention of the legislature that the chancellor should review the whole proceeding in the cause. (2 *R. S.* 178, § 62.) The original act, giving chancery jurisdiction to the circuit judges, clearly implies a review by the chancellor of the whole proceedings, on appeal from the final decree, by placing obstacles in the way of appeals from interlocutory decrees. And let it be remembered, this cause was commenced under that statute, and the first decree made before the revised statutes went into effect. (*Session Laws of* 1823, *p.* 214, § 15.) The revised statutes did not intend to alter the rule in that respect. (*See modification of* 116*th Rule of this court,* 7*th January,* 1834.) The appeal from the final decree would

open the interlocutory decrees, aside from the statute. (17
*John. Ch. Rep.* 584.  1 *John. Cas.* 498.  8 *Wendell*, 240.)

The first decree in the cause was erroneous.  The contract,
under which the security was pledged, was altered without the
consent of the pledgor.  Sureties are to be held liable only up-
on a compliance with the strict letter of the contract.  A court
will not inquire whether the surety is actually injured by the
alteration.  It is sufficient that he may be injured.  (2 *Caines'*
*Cas. in Er.* 1; 34, 35, 44 *to* 50, 57, 58.  2 *Taunt.* 206.  8 *Wen-*
*dell*, 516.  10 *John. Rep.* 180, 587.)  The giving time was
an act founded on sufficient consideration, and was binding.
The principal could not have been holden on the original
agreement for which the security was given.  Certainly, then,
the surety could not.  (1 *John. Cas.* 22.  1 *Cowen*, 345.  9 *Id.*
115.)  Perhaps it may be objected that this should have been
taken advantage of by demurrer.  In answer to this, it will be
remembered that the bill was framed with two aspects ; one,
that the premises in question were owned by Hudson and as-
signed by him to the complainant, and the other, that Han-
nah had assigned or authorized Hudson to assign the same, as
security for the fulfilment of the contract.  We successfully
rebutted the first position, by answer and proof, and we then
resort to the bill to help us out on the other position.  Besides,
a motion was made at the time of taking the testimony, af-
ter the complainant had closed his proofs, for the dismissal of
the bill for want of equity, agreeably to the rules of the court
at that time.  (*See* 65*th Rule of Equity Courts, Oct.* 8, 1825.)

It was not established by legal proof that Hannah assign-
ed her interest in the premises in question.  The loss of the
instrument was not proven.  The respondent could not iden-
tify the one lost, to be the same proven by Mrs. Stevens.
Again, it may be questioned whether an assignment, in the
manner alleged, would vest the interest in the assignee with-
out a delivery of the contract, especially as against a sub-
sequent assignee of the contract.  The vendors would not be
bound to recognize any assignment, except such as was on
the contract itself.  They look to the contract itself, and to the
holder thereof, to ascertain who is the owner of it.  The appel-
lant having renewed the contract, or made a new agreement

with the vendors, or their agent Mr. Cameron, and that in good faith, he could claim of them a compliance therewith. And how is this suit to alter the case? It cannot bind the vendors, who would be the actors in giving a deed. The suit, if any right exists, should have included the vendors. The vice chancellor decided that the premises in question were Hannah Topping's. Did Hannah ever assign her interest to Hudson? This is not alleged in the bill, which it should have been, if intended to be relied upon. Again such an assignment, to be valid, should have been in writing. She was in possession of the land under the contract, had paid part of the purchase money, and had made improvements. This was an interest in lands, within the statute of frauds. It is not pretended that any writing was made conveying Hannah's interest to Hudson. Therefore, all declarations that she had given the lands to Hudson, or intended to give them to him, were inadmissible; and such testimony was objected to. (*See* 1 *R. L. of* 1813, 78. 7 *John. Rep.* 205.)

THE CHANCELLOR. The only question which is properly before me on this appeal is as to the correctness of the vice chancellor's decision in allowing the exceptions to the master's last report, and fixing the complainant's damages at a larger sum than had been allowed by the master. The original decree of March, 1830, was, for all substantial purposes, a final decree; and not being appealed from within the time allowed by law for appealing, it cannot now be altered or reversed by the appellate court. It settled all the rights of the parties, except as to the amount of damages sustained by the complainant by the non-performance of the agreement for cutting and drawing the saw-logs, and the balance, if any, which had been paid by the defendant Read upon the land contract, over and above the rents and profits of the premises during his occupancy thereof. It contained all the necessary and consequential directions for carrying the decision of the court into effect, when the master's report should have been made and confirmed. And it also disposed of the question between the parties as to the general costs of the cause. Nothing, therefore, was left to be done, upon the coming in and confirmation of the report, but to enroll the decree, and to enforce

its performance by the ordinary process of the court. And the report, if not excepted to, would have been confirmed by an order of course, entered by the clerk upon the mere application of the solicitor, and without bringing the case again before the court. The exceptions to the master's report, and the proceedings thereon, were therefore merely collateral to the decree ; and an appeal from the order of the vice chancellor allowing such exceptions and reforming the master's report, cannot authorize the appellate court to reverse or alter the original decree upon which the report was founded. The directions for carrying the first decree into effect, contained in this order, were merely surplusage. The effect of the order, allowing the exceptions and modifying the report as to damages, would have been the same if those directions had been omitted therein, as they were already contained in the original decree, and need not have been repeated in this last order.

The objection is not well taken, that the vice chancellor was bound to refer the case back to the master, and that he had no right to settle the amount himself upon the allowance of the exceptions to the report. The evidence, upon which the master had acted in the settlement of the damages, was necessarily brought before the court upon the hearing of the exceptions to the report ; and the vice chancellor having decided that the report of the master, founded upon that evidence, was incorrect as to the amount of damages, it was proper that the court should fix the amount. The object of a reference to a master is for the convenience of the court ; to ascertain disputed facts, and to make computations which would take up too much of the time of the court. And where but a single item is in dispute, upon an exception to a report, it is the usual practice, upon the allowance of the exception, to modify the report, by a decretal order, instead of sending it back to the master to be corrected.

I am not satisfied with the correctness of the principle adopted by the vice chancellor, in the decretal order of October, 1831, in disregarding the benefit which the complainant had derived from the delivery of the 160 saw-logs, in computing the damages sustained by the non-fulfillment of

the contract. I am aware that this decision is based upon the authority of the case of *Stephens* v. *Beard*, (4 *Wend. Rep.* 804,) in the supreme court. But although I have the highest respect for the worth and talents of the learned judge who examined that case, and of his associates who concurred in the decision, I cannot bring my judgment to assent either to the equity or to the justice of a rule of damages which, in many cases, will enable a party to recover a compensation as for an injury, when he has in fact been benefitted by the neglect of his adversary to fulfil a contract after it had been in part performed. It is well settled that, where the contract is entire, a party who has advanced money or done any other act in part performance thereof, and then, without any legal excuse, has neglected or refused to proceed and complete the contract on his part, cannot recover for the money advanced, or for what he has done under the contract, although the other party has been actually benefitted thereby. (*M'Millen* v. *Vanderlip*, 12 *John. Rep.* 165. *Jennings* v. *Camp*, 13 *Id.* 94.) And the case of *Stephens* v. *Beard* was decided upon the erroneous supposition that in estimating the plaintiff's damages, no allowance could be made for the benefit he had received by a partial performance of the contract, because no action could have been maintained against him, by the defendant, until the contract had been complied with in full. But, upon examination, it will be found that there are many cases in which a benefit received by the plaintiff at the expense of a defendant may be *recouped* in damages, although no action could have been brought by the defendant against him, to recover compensation therefor. A very familiar instance of this kind is the allowance made to the defendant, in an action for mesne profits, for beneficial improvements upon the land, although no action could have been sustained against the owner of the land to recover compensation for such improvements. So also, where a man disseises another of his land upon which there is a rent charge, and the disseisor pays the rent, if the disseisee afterwards recovers the land and damages in an assize, such rent shall be *recouped* in the damages, although the defendant in the assize could not have recovered

1834.

Taylor
v.
Read.

the rent thus paid, in an action brought by him. (1 *Dyer's Rep. 2, b.*)

Where an agreement is made between two persons, for the sale and delivery from one to the other of 100 barrels of flour, at the price of five dollars a barrel, to be delivered within a certain period, and to be paid for on the delivery of the whole quantity, if ninety barrels are delivered within the time limited, but the other ten are not delivered, and the actual value of the flour is but six dollars a barrel at the expiration of the time limited for the completion of the contract, it is evident that the vendee will be benefitted by the non-fulfilment of the contract, to the extent of the contract price of the ninety barrels received, deducting therefrom the sum of ten dollars for the difference between the actual value and the contract price of the other ten barrels ; inasmuch as he will be permitted to retain the ninety barrels without paying any thing therefor. In other words, the vendee will be benefitted to the amount of $440, by the non-performance of the contract, instead of being injured to the value of $10 ; as the fulfilment of the contract would have made the vendee liable for the payment of the whole contract price of the 100 barrels. And yet, upon the principle adopted by the supreme court, in *Stephens* v. *Beard,* and acted upon by the vice chancellor in the decretal order of October, 1831, the vendee in such a case would still be entitled to recover of the vendor, the ten dollars, as damages for the non-delivery of the last ten barrels of flour, and might also retain the other ninety barrels for which he had paid nothing. It appears to me that a rule of damages which produces such results cannot be correct. But if such be the rule of law, it certainly is not one which ought to be followed by this court, when the party who has been benefitted by the non-fulfilment of the contract comes here to ask for equity. A question, however, arises in this case whether it is competent for this court, upon an appeal from the decision of the vice chancellor upon the exceptions to the second report, to review the former decision which settled the principles upon which the master was to proceed in making such report. But the conclusion at which I have arrived upon another part of the

case renders it unnecessary that I should express any opinion on that question at this time.

I have not been able to ascertain upon what principle of computation the vice chancellor arrived at the conclusion that the complainant's damages, for the non-delivery of the 340 logs, amounted to $338,77, the sum fixed by him in the decretal order of October, 1833, even if he was right in laying out of consideration the benefit which the complainant had derived from the part performance of the contract. The original decree of his predecessor proceeded upon the ground that the land contract belonged to Hannah Topping, and that it was assigned by her merely as a security for the performance of the agreement of her son to deliver the saw-logs. And it was upon this ground alone that the payments in advance were not to be allowed, unless it should appear that she had assented thereto ; as by the terms of the agreement, the price of getting the logs was to be applied to the payment of what was due on the land contract, for her benefit. The damages, therefore, according to the decretal order of October, 1831, were to be estimated in the same manner as if the contract had been for the delivery of 340 logs, at forty cents each, of which none had been delivered and nothing had been paid on account thereof. The only witnesses who have spoken on the subject of the damages, estimated them at from eight hundred to a thousand dollars. And if any reliance could be placed upon those estimates, in opposition to the legal rule of damages founded upon the facts in evidence before the master, the amount should have been fixed at the sum of $800, at the least. Their estimate, however, was founded upon the assumption that the complainant was entitled to recover in damages the whole amount of the profits which could have been made by sawing the logs into boards, although his mill may have been as profitably employed, in sawing other logs, during the time which would have been requisite to have sawed up these particular logs, had they been delivered on the contract. This certainly would not be a correct mode of estimating the damages, unless it also appeared that the mill was unemployed, during that period of time, because no other logs could be procured on which a profit could be made by sawing them, be-

1834.

Taylor
v.
Read.

yond the first cost or value of the logs and the labor and ex-pense of running the mill. But in this case it appears affir-matively by the testimony of Youmans, which is stated at length in the first report of the master, that the complainant's mill did not lie idle for want of logs. And Glass and M'Clure both testify, that the value of cutting and drawing these logs would have been but $120. Where a contract is made for the delivery of goods on sale, to be paid for upon receipt of the goods, the proper measure of damages, if no part of the goods is delivered, is the difference between the value of the goods at the time they should have been delivered, and the contract price. (*Leigh* v. *Paterson,* 3 *J. B. Moore's Rep.* 588. *Clark* v. *Pinney,* 7 *Cowen's Rep.* 681. *Dey* v. *Dox,* 9 *Wend. Rep.* 129.) To which may be added the interest, on such difference in value, from the time when the goods should have been delivered, as a part of the damages to be recovered for the breach of contract. (*Dox & Mercer* v. *Dey,* 3 *Wend. Rep.* 356.) In a case like the present, where particular ar-ticles of property are to be delivered within a limited period, and to be used or applied for a specific purpose, and not for general merchandize, the principles upon which the damages for a non-performance of the contract should be estimated are very correctly laid down by Mr. Justice Weston, in the case of *Miller* v. *The Mariner's Church,* (7 *Greenl. Rep.* 55.) After stating the general rule of equity and common sense, that the delinquent party is holden to make good the loss occasioned by his delinquency, he proceeds to say that such liability is limited to direct damages, which, according to the nature of the subject, may be contemplated or presumed to result from the failure ; and that remote or speculative damages, although susceptible of proof, and deducible from the non-performance of the contract, are not to be allowed. That if the party en-titled to the benefit of a contract can protect himself from a loss, arising from a breach thereof, at a trifling expense, or with reasonable exertions, he fails in social duty if he omits to do so, regardless of the increased amount of damages for which he may intend to hold the other contracting party lia-ble. And that the law will not permit him to throw the loss upon the other contracting party, if by common prudence he

1834.

Taylor
v.
Read.

could himself have prevented the loss. "For example : a party contracts for a quantity of bricks to build a house, to be delivered at a given time ; and engages masons and carpenters to go on with the work. The bricks are not delivered. If other bricks of an equal quality, and for the stipulated price, can be at once purchased on the spot, it would be unreasonable, by neglecting to make the purchase, to claim and receive, of the delinquent party, damages for the workmen, and the amount of rent which might be obtained for the house if it had been built. The party who is not chargeable with a violation of the contract, should do the best he can in such cases, and for any unavoidable loss, occasioned by the failure of the other, he is entitled to a liberal and a complete indemnity." In other words, if the party entitled to the performance of the contract can himself procure the articles contracted to be delivered, within a reasonable time, he is only entitled to such damages as will fully compensate him for the additional expense and price, and the injury resulting from the necessary delay in obtaining the articles.

Applying these principles to the present case, under the directions contained in the decree, to reject the $200 advanced as a payment on the contract, I think the master arrived at a correct conclusion, upon the evidence, that the damages of the complainant were merely nominal. It was not stated in express terms, in the written contract, that the complainant was to furnish the trees from which the saw-logs were to be made. The place from whence the logs were to be obtained, however, was stated ; and it is fairly inferrible from the whole case that the logs were to be cut upon the complainant's land, or upon lands from which he had the right to take timber for the supply of his mill. The price which he would have been bound by the agreement to pay, and to apply on the land contract for the benefit of Hannah Topping, if the agreement had been fulfilled, was forty cents a log ; or $136 for the 340 logs which remained to be delivered. And the cutting and drawing of such logs, according to the testimony of Glass and M'Clure, the only witnesses who say any thing on the subject, would have been but $120. The difference, therefore, between the contract price of the saw-logs, and the actual

value of the cutting and drawing them, was such as to make it for the interest of the complainant that the contract should not be performed; as the price for which the logs could be procured by him was $16 less than the price which he was to pay for them, in orders upon the land office. And there is no testimony in the case to show, or from which it can be inferred, that he could not have procured the logs, if there were any such upon the land, for the price stated by those witnesses; and in time to have kept his mill constantly supplied. And if no such logs as were mentioned in the agreement could be found, upon the land, Topping is not chargeable with a loss arising from that cause. I do not, therefore, see how it was possible for the master to say the complainant had sustained any thing more than nominal damages, from the non-performance of the contract, unless he had wholly disregarded the directions of the original decree and of the decretal order of October, 1831, to reject the payments made to Hudson Topping, to which his mother had not assented.

The decretal order appealed from must, therefore, be reversed. The exceptions to the last report of the master must be overruled with costs, and the report confirmed. And the appellant is also entitled to the costs of this appeal.