The Corporation Commission rendered the following judgment:
TRAVIS, Chairman: This is a proceedings brought by the Laurinburg and Southern Railroad Company for the purpose of having this Commission, pursuant to the powers conferred upon it by statute, prescribe what kind of interlocking switch or switches shall be installed and maintained by the plaintiff where its tracks cross the tracks of the defendant Seaboard Air Line Railway in the town of Laurinburg.
It appears that at the time of procuring the consent of the defendant to cross its tracks and right of way the plaintiff company entered into a contract in which it stipulated that it would construct at this point such interlocking switches as the defendant company, through its chief engineer, might at any time thereafter require. The defendant company, therefore, subsequently required and demanded that the plaintiff install at this crossing what is called an automatic interlocking plant. The plaintiff company deeming this an unreasonable requirement, imposing upon it an unnecessarily large investment and cost of operation, refused to construct it. The Seaboard Air Line Company, then being in the hands of a receiver, appointed under proceedings instituted in the United States Court before Judge Pritchard, appealed to Judge Pritchard for a mandamus requiring the construction of the plant by them under the contract. It seems that at the hearing before Judge Pritchard a consent order was entered requiring the construction of the automatic (415) interlocking plant. Subsequent negotiations in respect to the matter occurred between the respective companies, but they failed to reach any satisfactory arrangement. The defendant company thereafter applied to Judge Connor of the United States District Court for an order requiring the plaintiff to comply with the former order made by Judge Pritchard. Subsequent to an order made in the premises by *Page 465 
Judge Connor the plaintiff instituted this proceeding before the Corporation Commission. This Commission heard the evidence in the matter, and as given their careful consideration to the questions involved.
If it was an original question for us to determined what kind of interlocking plant we would prescribe at this crossing for the public protection, we would find little trouble in determining the matter, but we find the question complicated both by the contractual obligation of the plaintiff company to the defendant company, given in consideration of a right granted by the defendant to cross its track, and also by the orders of the Federal court above referred to. This Commission is clearly of the opinion that an interlocking plant knows as the "Cabin Door" interlocking system would be adequate and safe at this crossing, and considering the amount and character of use made of this crossing by the plaintiff, it is all that the public safety demands and is all that ought reasonably to be required, and but for the contractual obligations and the orders of court above referred to, it is what this Commission would prescribe. We are of the opinion, however, that this Commission could not nullify the contract of the plaintiff to put in such an interlocking plant as the defendant may demand, nor could it direct or require defendant to ignore the order of the Federal court to put in such a plant unless it appeared to this Commission that the character of plant required by the defendant and ordered by the court was unsafe and did not furnish adequate protection for the traveling public.
Examining the record with a view of determining this question, we find from the evidence that the plans and drawing of the interlocking plant demanded by defendant and ordered to be put in by the court are defective in that they do not show the proper number of levers to operate the derails provided in this plant, and that if the plant were installed, or it were attempted to be installed, in strict accordance with these plans and drawings, the same would be defective and unsafe, and this Commission would feel that it was its duty, in the interest of the public safety, to require a different and more perfect plant. The defendants contend, however, that this defect in the drawings, which is not seriously denied, is remedied by a provision in the specifications, as follows:
"The contractor shall furnish all tools, material, and labor (416) except as may be hereafter noted, to erect and complete the work in accordance with the intent of the plans and specifications, and anything that is obviously necessary to complete or make useful any part mentioned in specifications shall be provided by the contractor, although such part is not shown on the plans."
We find that if, under this stipulation, the automatic interlocking plant were properly installed and the defects in the plans and drawings *Page 466 
remedied, it would be a safe interlocking system, although in the opinion of this Commission unnecessarily and unreasonably elaborate and expensive for a crossing subject to no more use than is this one.
The conclusion to which we have come, therefore, is that, while this Commission clearly thinks that the Cabin Door interlocking plant would be suitable and adequate for this crossing, it does not think that it has the power to order that this system be put in, and no other, without improperly interfering with the contractual rights of the defendants in the premises; and the petition is, therefore, dismissed.
The facts of this case are very clearly and fully stated in the judgment of the Corporation Commission, and it is unnecessary to do more than refer to it for a statement of the controversy.
The petition of the Laurinburg and Southern Railroad Company sets forth the matter in controversy between it and the defendant, and petitions the Commission "to make such orders in the premises as the public safety demands with reference to a system of interlocking switches or signals at the Laurinburg crossing, specifying and determining the kind of system which shall be installed and maintained at said crossing and apportioning the cost thereof between petitioner and defendant as may be just ad proper."
The Commission finds upon investigation that the "cabin door" interlocking system of switches is adequate and safe at the crossing and, "considering the amount and character of use made of this crossing by the plaintiff, it is all that the public safety demands and is all that ought reasonably to be required, and but for the contractual obligations and the orders of court above referred to, it is what this Commission would prescribe."
The Commission further finds that the tower interlocking system is a perfectly safe system, "but unnecessarily and unreasonably elaborate and expensive for a crossing subject to no more use than this one." (417) The Commission concludes that both systems being equally safe, the public safety is not involved, and that in view of the contract between the parties, it has no power to direct that the cabin door system be installed in preference to the other without unduly interfering with the contractual rights to the defendant.
We think this conclusion is well founded and supported by authority. It is undoubtedly true, as contended by petitioner, that public-service corporations cannot be contracting among themselves deprive the State *Page 467 
of its right to exercise its police power in the interest of public safety. If the contract does not adequately protect the public, then the police power may be used to the full extent necessary to require the contracting parties, notwithstanding the contract, to conform to every requirement necessary for the public safety. But, under the guise of an exercise of the police power of the State, the courts cannot deprive a citizen of property or contract rights that have no tendency to injure the public health, morals, safety, or general welfare.
As said in R. R., v. Drainage District, 233 U.S. 75, "The decisions also show that a State cannot avoid the operation of the fourteenth amendment by simply invoking the convenient apologetics of the police power." Mugler v. Kansas, 123 U.S. 210; Eubank v. Richmond,226 U.S. 137.
It having been found by the Commission that both systems of switches are equally safe, the public interest in that respect is eliminated and the parties are remitted to their rights under the contract. That a consent judgment is a contract is too well settled to be questioned. Edney v.Edney, 81 N. c., 1: Massey v. Barbee, 138 N.C. 84; Bank v. McEwen,160 N.C. 425.
It is contended that the contract is needlessly harsh and oppressive and ought not to be enforced. Petitioner contends that its railroad is only 18 miles in length and operates in only one county in North Carolina; that its capital stock is only $50,000; that the present cost of installing the tower plant will approximate $15,000 and that the cost of operation will be $2,000 per annum in addition to the depreciation and maintenance cost. Petitioner contends that the installation of such an expensive system is not only utterly unreasonable, but entirely beyond its means, and that if compelled to install it, petitioner will be so burdened that it will be unable to properly discharge its duties as a common carrier.
If these facts are true, they present a strong case for the intervention of a court of equity; but the Corporation Commission has no equitable jurisdiction and no right to grant equitable relief.
If petitioner, being a common carrier within this State, and (418) affected with a public trust, has unadvisedly entered into this contract with defendant, and it turns out that its enforcement is unnecessary to public safety, unconscionable and oppressive, so much that it will seriously impair the ability of petitioner to discharge its public duties as a common carrier, then the State has an interest in the controversy which may be protected by the Corporation Commission or the courts. But that phase of the controversy is not before us and need not now be considered. It may never arise. *Page 468 
It is stated in the evidence for defendant that its president, Hix, agreed that "he would allow the Seaboard to put in the cabin door type temporarily, with the understanding that if its operation did not prove satisfactory that they would, at their own expense, extend the plant and provide full protection under the tower system."
It may be that when tried out the cabin door switch will prove its efficiency, and that is all that is necessary, and thereby put an end to the controversy. As the matter now stands upon the facts found by the Corporation Commission, we think the petition was properly dismissed.
The judgment of the Superior Court affirming the judgment of the Corporation Commission is
Affirmed.
The costs will be taxed against the Laurinburg and Southern Railroad Company.
Cited: Walls v. Strickland, 174 N.C. 302; In re Utilities Co.,179 N.C. 166.