The petition was filed by the Southern Public Utilities Company, operating street cars in the city of Charlotte, and in which it was alleged "That on account of the abnormal increase in the price of steel, copper, cars, and all equipment and material, and the increased cost of labor incident to our business, your petitioner cannot profitably nor properly conduct its street railway at the present pre-war rates." That it had been charging a 5-cent fare with eleven tickets for 50 cents, and closed with the prayer that it might be granted the privilege of increasing said rate to 7 cents, with the understanding that the company would sell four tickets at 25 cents.
The city of Charlotte, made a party by notice issued by direction of the commission, appeared and resisted the application. The hearing was set for 8 July at the city of Raleigh; the parties appeared, and on suggestion from the city's counsel that as the developments of the hearing might render a further presentation of facts necessary on the part of the city, they would ask for that privilege. The chairman replied that it was the purpose of the commission to get at the real facts with as little formality as possible, and that if it became necessary to make further investigation to set forth the substantial facts, opportunity would be given. The hearing was then entered upon, no formal answer having been filed.
For the petitioner, the president of the company was examined, making an elaborate statement of conditions, which it was claimed justified the proposed increase.
On the cross-examination the city of Charlotte sought to disclose that the facts and conditions presented did not justify the increase. That the company had given an overvaluation of the property, and had made excessive claims for depreciation, etc.
At the close of the examination of this witness, the taking of the oral testimony was not further pursued.
The following day the company, by leave given, submitted to the commission certain data in illustration and support of the oral evidence of its president.
On 13 July, 5 days after the first hearing, pursuant to leave given, the city of Charlotte filed its formal answer resisting the application in terms as follows:
"The city of Charlotte, in behalf of the citizens and patrons of the street car service of the petitioner, responding to the petition in the above entitled matter, say and allege as follows: *Page 154 
"1. That as this respondent is advised and believes, the valuation placed on the property of the petitioner, for which and upon which it claims the returns of its street railway system is excessive and larger than the actual value of said property, and that if a fair valuation is placed on such property the returns from the operation thereof at present prices would be adequate to cover all operating expenses, including overhead expenses and a reasonable sum for depreciation, and would in addition thereto yield the petitioner such a return upon the investment as should be satisfactory to the petitioner in war times, when all of the citizenship as well as corporations are necessarily being called upon to bear extraordinary burdens incident to the war, and to conduct their business at either no profit or at a much less profit than under normal circumstances.
"2. That in arriving at the amount to be set aside for depreciation, no sum should be allowed for depreciation on real estate within the city of Charlotte, as such real estate not only does not depreciate in value, but actually enhances in value from year to year with the development and growth of the city.
"3. That if the petitioner is entitled to amortize the cost of the Camp Greene line, it is certainly not entitled to amortize the entire cost thereof, as it is manifest that at the end of the three-year period, which is the estimated life of the said Camp Greene lines, there shall be salvaged in the materials entering into the construction of such Camp Greene lines; and in any amortization of the cost of such lines, this salvage should be taken into consideration and be deducted from the amount of the cost of such lines.
"For further and sufficient answer to the plaintiff's petition, this respondent says:
"1. That the petitioner, the Southern Public Utilities Company, is the successor to the Charlotte Electric Railway Light Power Company, which latter corporation is in turn the successor to the Charlotte Street Railway, which was incorporated by an act of the General Assembly of North Carolina in the session of 1883.
"2. That on 29 September, 1886, the city of Charlotte and the Charlotte Street Railway Company entered into a contract, by the terms of which the said street railway company was granted the right and franchise to maintain and operate a street railway upon the streets and avenues of the city of Charlotte, and in return for which right and franchise the said street railway company contracted and agreed that not more than 5 cents be charged by said street railway company as fare for one continuous ride, from 6 a.m. to 10 p.m., within the city limits, and thereby contracted and agreed to a rate satisfactory to it for the performance of such service; and this petitioner, as the *Page 155 
successor of the Charlotte Street Railway Company, is clothed with such rights and bound by such terms of said contract and agreement; a copy of which contract and agreement is hereto attached and made a part of this answer, and is hereby especially pleaded and offered in answer and bar to the petition herein.
"Wherefore, the city of Charlotte respectfully prays that the petition in the above entitled matter be dismissed."
And in support of this further answer it was shown that:
"The Charlotte Street Railway Company was incorporated by the General Assembly at the session of 1883, and was authorized to establish a street railway service in the city of Charlotte. On 29 September, 1886, a written contract was made by this railway company and the city, in which is the following: `Resolved that whereas the constructing and operating of lines of street railway will be of material benefit to the citizens of Charlotte, the said city agrees that it will not charge or collect a greater sum than $25 per annum upon the plant property and franchise of the said street railway company for the period of ten years; provided that not more than 5 cents be charged by said street railway company as fare for one continuous ride, from 6 o'clock a.m. to 10 o'clock p.m., within the city limits.'
"The name of the Charlotte Street Railway Company was thereafter changed to the Charlotte Electric Railway Light Power Company, to whose rights and franchises the petition has succeeded."
On consideration of the facts in evidence, the commission made an order granting the prayer of the petitioner, the said order being in terms as follows:
"The hearing of this petition was had at the office of the commission on 18 July, 1918; and it appearing clearly to the commission that this company cannot operate and continue to give good service at the rate they were receiving under present conditions, it is, therefore, ordered that the Southern Public Company be, and it is hereby, authorized to charge a fare of seven cents for the transportation of passengers over its street railway lines located in the cities of Charlotte and Winston-Salem; that this company shall also be required to put on and offer for sale to the public in general four tickets for twenty-five cents. The company is also authorized, if it shall deem it advisable, to put on and offer for sale to the public generally books containing seventeen tickets for the sum of one dollar per book.
"This order to become effective 1 August, 1918.
"This 30 July, 1918." *Page 156 
From this order the defendant, the respondent, gave notice of appeal as follows:
"To the Honorable the Corporation Commission, Raleigh, N.C.
"Whereas, in the above entitled matter, the Corporation Commission overruled the exceptions filed by the city of Charlotte to the order of the Honorable, the Corporation Commission, authorizing the Southern Public Utilities Company to increase its fares for street car service in the city of Charlotte.
"Now, therefore, the respondent, the city of Charlotte, does hereby appeal from such order and rulings to the Superior Court, in term, and does herewith give to the Honorable Corporation Commission notice of such appeal, and prays the Honorable Commission to accept these premises as notice of such purposes and intention."
And filed exceptions and assignments of error as follows:
"The city of Charlotte herewith excepts to the order of the Honorable Corporation Commission overruling the respondent's exceptions to the order of the Honorable Commission, authorizing the Southern Public Utilities Company, a corporation, engaged in the street railway business in the city of Charlotte, to increase street car fare in said city, and groups its exceptions and assignments of error as follows:
"1. That the Honorable Corporation Commission found as a fact that the Southern Public Utilities Company `cannot operate and continue to given good service at the rate they were receiving under present conditions.'
"2. That the Honorable Commission did not find from the evidence before it any facts upon which to base its order as tending to show the necessity for such increased rates.
"3. That the Honorable Commission did not have before it any competent evidence showing the valuation of the property used by the petitioner in its street railway system in the city of Charlotte.
"4. That the valuation placed upon such property by the petitioner, and accepted by the Honorable Commission, was excessive and larger than the true and actual value of such property.
"5. That the sum claimed by petitioner for depreciation was excessive, and much larger than a fair and reasonable allowance on such account.
"6. That the Honorable Commission permitted the petitioner to amortize its Camp Greene lines within ten years without salvage or without credit as an asset.
"7. That the Honorable Commission failed and refused to hold that the petitioner was bound by the terms of the contract between the city of Charlotte and the Charlotte Street Railway Company, the predecessor of the petitioner, under date of 28 September, 1886. *Page 157 
"8. That the Honorable Commission did not order and require the petitioner to put on and offer for sale to the public, books containing seventeen (17) tickets for the sum of one dollar ($1) per book.
"Wherefore, the respondent prays the Honorable Corporation Commission to transmit its record to the Superior Court for such further and other proceedings as there may be had, according to law."
The appeal was allowed by the commission over the protest of the petitioner, who claimed that no appeal would lie under such order except by the utilities or railway company, whose rates or interests are thereby affected.
The record having been duly certified to the Superior Court, to February Term, 1919, where the proceedings pertinent are given in the case on appeal, the petitioner filed written motion to dismiss in terms as follows:
"1. That the city of Charlotte is not a party to this proceeding, and has no right to appeal from the order of the Corporation Commission made herein.
"2. That the city of Charlotte is not affected by the order of the Corporation Commission made herein, and under the statute has no right to appeal from said order.
"3. That the only exception and assignment of error property taken and made by said city of Charlotte to the order of the Corporation Commission herein is the exception and assignment of error based upon the alleged contract between the city of Charlotte and the predecessor in title of the Southern Public Utilities Company, and said exception and assignment of error appear upon the face of the record herein not to be valid.
"Wherefore, the Southern Public Utilities Company prays this Honorable Court that the appeal of the city of Charlotte herein be dismissed.
CANSLER CANSLER,
 OSBORNE, COCKE ROBINSON, Attorneys for the Southern Public Utilities Co."
The city of Charlotte moved that the contract between the Charlotte Street Railway Company and the city of Charlotte, dated 29 September, 1886, be held valid and binding between the city of Charlotte and the Southern Public Utilities Company, successor to the Charlotte Street Railway Company, and enforcible notwithstanding the order of the Corporation Commission made herein, and that the Southern Public Utilities Company be forbidden and enjoined from charging and collecting in excess of five (5) cents for one continuous ride on its street railway lines within the city of Charlotte. *Page 158 
It was admitted that the Southern Public Company is the successor to the Charlotte Street Railway Company; the Charlotte Electric Railway Company having succeeded the Charlotte Street Railway Company, and the Southern Public Utilities Company having succeeded the Charlotte Electric Railway Company.
Testimony was introduced by the city of Charlotte to the effect that during the ten (10) years following the date of the contract between the Charlotte Street Railway Company and the city of Charlotte, to wit, the contract of 29 September, 1886, said street railway company paid no taxes to the city of Charlotte; that since the expiration of said ten-year period, said street railway company and its successors have paid to the city of Charlotte ad valorem property taxes, which have been regularly assessed against the property of said street railway company and its successors, and also license taxes annually charged and collected by the city of Charlotte without reference to any limitation.
By consent, the court took the case under advisement and at March term entered judgment in effect:
1. That respondent had the right to prosecute the appeal.
2. That the contract with the city must be subordinated to the orders of the Corporation Commission, paying just and reasonable rates in pursuance of law, and subject to the record on appeal to the Superior Court. And further, that the cause be referred to Mr. U. L. Spence to hear such evidence, and take such accounts as may be necessary, and make report to the court as early as practicable, whether the measure of rates allowed by the commission were reasonable, just, etc.
From this judgment the Southern Public Utilities Company, having duly excepted, appealed, assigning error as follows:
"2. For that his Honor erred in refusing to sustain the motion of the Southern Public Utilities Company based upon the entire record in this proceeding, consisting of the record as certified from the Corporation Commission, and the record of the proceedings in the Superior Court (except the final conclusion contained in his Honor's findings of fact and judgment entered 5 April, 1919) to dismiss the appeal of the city of Charlotte.
"3. For that his Honor erred in signing the judgment rendered in this proceeding."
The city of Charlotte also excepted and appealed, assigning error as follows:
"For that his Honor erred in refusing to hold, as a matter of law, and to render judgment in this proceeding, that the contract of 29 September, 1886, entered into between the city of Charlotte and the Charlotte Street Railway Company, predecessor of the Southern Public Utilities *Page 159 
Company, is valid and binding between the parties hereto, and still enforcible notwithstanding the order of the Corporation Commission made herein, and to forbid and enjoin the Southern Public Utilities Company from charging and collecting a fare in excess of five (5) cents for one continuous ride on its street railway lines in the city of Charlotte.
"2. For that his Honor erred in refusing to restrain the Southern Public Utilities Company from collecting a local fare in excess of five (5) cents pending the further hearing of this cause.
"3. For that his Honor erred in refusing to make an order requiring the Southern Public Utilities Company to issue receipts to all persons paying a seven (7) cent fare pending the further hearing of this cause.
"4. For that his Honor erred in signing the judgment rendered in this proceeding."
Appeal of the city of Charlotte, respondent.
after stating the case: The power of the Legislature, either directly or through appropriate governmental agencies, to establish reasonable regulations for public-service corporations in matters affecting the public interests is now universally recognized, and the principle has been approved with us in well considered decisions dealing directly with the question. R. R. v. Goldsboro, 155 N.C. affirmed on writ of error to Supreme Court of United States, 232 U.S. 548-558; Corporation Commissionv. R. R., 140 N.C. 239; Corporation Commission v. R. R., 137 N.C. 1. Having devoted their property to the public use, and operating under a legislative charter, usually conferring the right of eminent domain, they are in a peculiar sense subject to the police power, said by AssociateJustice McKenna, in Mutual Loan Co. v. Martell, 222 U.S. 225, to be but another name for the power of government, and where this has been properly exerted in reference to these companies, the proprietary rights of individual ownership must, to that extent, be subordinated to the public welfare. In Thomas v. Sanderlin, 173 N.C. at page 331, the Court referred to this principle as follows: "It has been properly said that no satisfactory definition of police power can be given for, as our civilization becomes more advanced and complex, the extent and inclusive character of this power is being more and more illustrated, and, in the later decisions, has been held to embrace not only governmental regulations appertaining to the good order, health, and morals of the community, but also such as are considered promotive of the economic welfare and public convenience and comfort." *Page 160 
The opinion then quotes with approval from 6 Ruling Case Law, 193, as follows: "All property within the jurisdiction of a State, however unqualified may be the title of the owner, is held on the implied condition or obligation that it shall not be injurious to the equal rights of others to the use and benefit of their own property. In other words, all property is held subject to the general police power of the State so to regulate and control its use in a proper case as to secure the general safety, the public welfare, and the peace, good order, and morals of the community. Accordingly, it is a fundamental principle of the constitutional system of the United States that rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in it by the Constitution, may think necessary and expedient. And to these ends the Legislature, under its police power, may pass laws regulating the acquisition, enjoyment, and disposition of property, even though in some respects these may operate as a restraint on individual freedom or the use of property. The subordination of property rights to the just exercise of the police power has been said to be as complete as is the subjection of these rights to the proper exercise of the taxing power; and it is held that this implied condition is quite irrespective of the source or character of the title. This principle is in effect an application of the maxim which underlies the police power, sicutere tuo ut alienum non laedas," citing in support of the statementChicago and Alton Railroad v. Tranberger, 238 U.S. 67; R. R. v.Goldsboro, 232 U.S. 548-558, and other cases.
In R. R. v. Goldsboro, supra, Associate Justice Whitney, for the Court, said: "For it is settled that neither the contract clause nor the due process has the effect of overruling the police power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant, and that all contract and property rights are held subject to its fair exercise."
In view of this power, and for its primary exercise, our General Assembly, chiefly in Rev., ch. 20, and amendments thereto, have created a Corporation Commission, given it general supervision over the railways, street railways, and like companies of the State, and empowered it to fix such rates, charges, and tariffs as may be reasonable and just, having in view the value of the property, the cost of improvements and maintenance, the probable earning capacity under the proposed rates, the sums required to meet operating expenses and other specified matters pertinent to such an inquiry. The statute further provides that "any party affected by the decisions and determinations of the commission *Page 161 
may appeal"; that the rates as fixed by the commission shall stand pending an appeal, and "until they are changed, revised, or modified by the judgment of the Superior Court on such appeal, and that when approved and confirmed by the court, they shall remain the established rates until the same shall be changed, revised, or modified by a final judgment of the Supreme Court, if there shall be an appeal, and until changed by the Corporation Commission.
Both from the language of the statute and its evident meaning and purpose, this power to fix rates that are just and reasonable extends to an increase as well as a lowering of rates, and, in making decision on these questions, it is clearly contemplated and provided that the commission shall establish such rates and charges as will give to the owners fair return for their investment and enable them to keep their property and equipment in condition to afford adequate, safe, and convenient service.
Under and by virtue of this Legislative authority and in the exercise of the power referred to, the commission in this instance, on notice given, have had an investigation, and, in their best judgment, have allowed the increase applied for by the petitioners, and, under the express provisions of the statute that are to be considered, the just and reasonable charges for the services rendered unless and until they shall be changed or modified on appeal, or the further action of the commission itself, and under the principle illustrated and approved in the cases cited, and others of like kind, we must affirm the ruling of his Honor that any contract that the city of Charlotte may have for a lower rate must yield to the public interest and requirement as expressed in this authoritative judgment of the commission.
Not only is the judgment of his Honor sustained by the principle more directly involved, but any other ruling in its practical application would likely and almost necessarily offend against the principle which forbids discrimination on the part of these companies towards patrons in like condition and circumstance. If a quasi- public company of this kind could evade or escape regulation establishing fixed rates that are found to be reasonable and just by making long-time contracts or other, this regulation might be made to operate in furtherance of the very evil it is in part designed to prevent.
Accordingly, it has been very insistently held, in case of railroads, that the rates established by the Interstate Commerce Commission and published pursuant to their order shall always prevail as the charges for transportation notwithstanding any special contract for lower rates made by the parties. Texas Pacific v. Mugg, etc., 202 U.S. 242, and many other cases. *Page 162 
A principle approved and applied by the Court in reference to intrastate transportation in Latham v. R. R., 176 U.S. 417, and Edenton Cotton Millsv. R. R., at present term, 100 S.E. 341.
And in the recent case of Union Dry Goods Co. v. Gas Public ServiceCorporation, 145 Ga. 658, it was held that where the State Railroad Commission, having cognizance of the matter, had fixed upon reasonable rates to be charged by a public-service Company supplying electricity to the inhabitants of a city which superseded lower rates agreed on in an existent long-time contract made previously between the company and the consumer, this was a valid exercise of the police power, not impairing the obligation of the contract or depriving the consumer of his property without due process. This case, which seems a direct authority on the question presented, was affirmed on writ of error by the Supreme Court of the United States, 248 U.S. 372. And Associate Justice Clarke, in delivering the opinion, quotes in support of the position, Manigault v.Springs, 199 U.S. 473-80: "It is the settled law of the Court that the interdiction of statutes impairing the obligation of contracts, does not prevent the State from properly exercising such powers as are vested in it for the promotion of the common weal or are necessary for the general good of the public through contracts previously entered into between individuals may be thereby affected."
And again, from L. N. R. R. Co. v. Motley, 219 U.S. 467-82, where the Court quotes with approval from Knox v. Lee, 12 Wallace, 450-51: "That contracts must be understood to be made in reference to the possible exercise of the rightful authorities of the Government, and no obligation of the contract can defeat the legitimate Government authority." It may be noted that this was a decision subordinating to the police power the contract rights of an individual, and all the more will the principle operate when these rights are held by a municipality, which, in the main and on governmental matters, are but governmental agencies of the State, and, as such, subject to almost unlimited legislative control, except when restricted by constitutional provision. Board of Trustees v. Webb,155 N.C. 379; Jones v. Comrs., 137 N.C. 579-596; New Orleans v. New OrleansWater Works, 142 U.S. 79; Wildwood v. Public Utilities Co., 88 N.J.L. 81.
We are inclined to the opinion, as contended for by the petitioner, that the provision in the contract restricting the company to a charge of 5 cents per passenger expired at the end of the 10-year period, the courts leaning against a construction that would make a contract of this character indefinite as to duration. Soloman v. Sewerage Co., 142 N.C. 439.
Nor are we inadvertent to the position also taken by the petitioner that the contract is void as in contravention of our constitutional provisions *Page 163 
requiring that taxation shall be uniform and ad valorem. In one aspect of the agreement, and the evidence pertinent, it may be that the case presented is at most merely one of ultra vires and that the petitioner or its predecessor in title, having received the stipulated consideration, is not in a position to question its corresponding obligation. See So. Pac.Co. v. City of Portland, 227 U.S. 559; Ry. v. McCarty, 96 U.S. 258;Chicago Ry. v. Chicago, 176 Ill. 188. Without definite ruling on either of these suggestions, however, we prefer to rest our decision on the ground taken by his Honor in the court below, that whatever may have been the rights of the city under and by virtue of the alleged contract, they were taken and held subject to the orders of the Corporation Commission, made in the reasonable exercise of the police power of the State, conferred upon that body by act of the General Assembly, and subject to be revised on appeal to the Superior Court, and thence to the Supreme Court, under the express provisions of the statute, Rev., 10741079, et seq.
The cases to which we are cited by respondent are in the main where one of the parties to the contract has of its own motion undertaken to justify a departure from its terms and are not authority on the question presented here. See Columbus Power and Light Co. v. The City of Columbus, 249 U.S., Current Reporter, 15 May, 349.
We find no error in respondent's appeal, and the judgment is
Affirmed.
Appeal of the Southern Public Utilities Company, petitioner.