The petitioner appeals from the ruling of the court denying the motion to dismiss made on the ground that the city of Charlotte had no such interest in the controversy as to justify and maintain its appeal, but we are of opinion that on the record and facts in evidence this position cannot be sustained. Not only was the city of Charlotte made a party and recognized as such by the Corporation Commission, but the Charlotte Street Railway Company, the predecessor in title of the petitioner, and under whose charter, so far as the record discloses, this appellant is now maintaining and operating its street railway in the city, has also recognized an interest in the city, and given it a status in the question and litigation concerning it. Holding, or making a reasonable and bona fide
claim to hold, rights under this contract, it must be allowed to have them considered and determined, both before the Corporation Commission and the Superior or Supreme Court, on appeal, as the statute provides. In addition, the question being one of public interest and of concern to each and all of its inhabitants, it was both the right and duty of the city to represent its people, assuredly so since the *Page 164 
statute conferring on town and city governments the power to grant franchises of this character, "upon reasonable terms for periods not to exceed 60 years." Rev., 2916 (6), ch. 73.
Under this statute, at the time of these proceedings instituted and hearing had, the city government having jurisdiction over the subject-matter, it was both its right and in the line of its official duty to make contracts and maintain such litigation concerning it as was reasonably necessary to conserve the rights of its people and make its jurisdiction effective and the well considered decisions hold that judgment rendered in such litigations will bind the individual citizen.
This position was approved with us as to counties in Bear v. Comrs.,122 N.C. 434, and as to cities and towns in Hickory v. R. R., 141 N.C. 716, it being held in this last case that "a municipality is a proper party to institute an action to prevent a public nuisance by the proposed enlargement of a freight depot in the city." And authoritative cases elsewhere, and text-books of approved excellence, are in support of the position. People v. Holladay, 93 Cal. 241; Trustees v. Cowen, 4 Paige, 570; Gas Co. v. City of Mincie, 160 Ind. 97; 19 R. C. L., title "Municipal Corporations," secs. 345, 427, 433. In this citation to R. C. L., sec. 345, it is said, among other things:
"That a municipal corporation is, in the eye of the law, the legal representative of its inhabitants and taxpayers with respect to all matters properly within its jurisdiction. . . . A municipal corporation is the proper representative of the equitable rights of its inhabitants to the use of a public square, and is authorized to file a bill in equity to prevent the erection of a nuisance thereon."
A judgment against a municipal corporation in a matter of general interest to all of the citizens is binding on the latter, though not parties to the suit, "and every taxpayer is a real, though not a nominal, party to such judgment and cannot relitigate issues which were litigated in the original action against the county or its legal representatives, and if the county board fails to avail itself of legal defenses the people are concluded by the judgment." And in section 427: "When a municipal corporation has the power to grant or refuse, in its discretion, permission to a public-service company to occupy the streets with its structure, whether such permission be called a franchise, a license, a permit, or merely designation of the streets to be occupied, it may grant such permission subject to such terms as it sees fit to impose, provided only they are not against public policy or in derogation of any right the company may have under its franchise from the State. Both under its contract, therefore, and as the representative of its inhabitants in a matter of public concern coming under its supervision, we are of opinion that the city had a right to appear in this litigation and to prosecute the appeal *Page 165 
in protection of its citizens, and as clearly provided by the statute. The decisions cited to the contrary are really in affirmance of the principle, for, so far as examined, they were made for the reason that the question presented was only a matter of individual interest or affected only a restricted portion of the population. This disposes of the only exception which the petitioner has seen fit to make on his appeal, but as it has been suggested that the respondent has not raised the question as to the reasonableness of the proposed increase of rates, but chosen to rely on the effect of its contract, we deem it not amiss to say that this position in our view does not correctly interpret the record. On the contrary, it is disclosed that at the principal hearing there were no formal pleadings filed, but the respondent appeared and by cross-examination of the president of the company, the only oral testimony presented during the investigation, the city, by its counsel, endeavored to show that the proposed rates were unreasonable and unjustified by the facts and conditions presented, and no mention of contract was then made. Five days later the contract was offered by the city, and its answer formally filed, alleging in effect that the increase was unreasonable, and setting up said contract also as a further and sufficient answer. When the order was made allowing the increase, the city filed formal exceptions and assignments of error, six of which were addressed to the unreasonableness of the rates and the valuation and methods by which it was sought to uphold them, and one, No. 7, referring to the contract.
When the cause was called for hearing on appeal in the Superior Court, the case was heard on the record, and the exceptions in behalf of the respondent clearly presented its objections to the order, both on the grounds that the rates were unreasonable and that the increase was absolutely inhibited by the terms of the contract held by the city. True, in the case on appeal it is stated that the city of Charlotte moved for judgment that the said contract be held valid and binding, and that the Southern Public Utilities Company be forbidden and enjoined from charging and collecting fares in excess of five cents, making no reference otherwise to the proposed increase of rates, but this was because the city was insisting upon the effect of its contract as a plea in bar of the reference, and it has a right to test that position on appeal. Jones v.Wooten, 137 N.C. 421. The respondent there made no further reference to the reasonableness of the rates because that question was resolved in its favor, and fully recognized by the judgment of the lower court. If there had been a difference between the case on appeal and the facts disclosed in the record, the record would control, but, as a matter of fact, there is no inconsistency between the two, and a correct interpretation will disclose that the position of the respondent has been maintained throughout. First, that the proposed change of rates was absolutely *Page 166 
forbidden by the contract, and if this were not true, that the increase was unreasonable and unjustified by the facts and conditions presented, and on the record we must affirm the judgment of his Honor below in its entirety, and hold that there has been no error committed to the prejudice of the petitioner's rights.
The case of Corporation Commission v. R. R., 170 N.C. 560, cited and very much relied upon by appellant, is not an authoritative decision in support of its position. In that case the Corporation Commission, after a full and fair investigation, had fixed upon the location of a railroad station in the town of Ansonville, N.C. and from their order in the case one or more of the citizens of the town, who appeared as parties to the proceedings, excepted and appealed. The Superior Court entered judgment dismissing the appeal, and, on appeal to this Court, the judgment was affirmed, two of the Justices being of opinion that, on a purely administrative measure of that kind an individual citizen of the town had no such interest in the controversy as entitled him to an appeal, an opinion was written in expression of that view. The present writer also wrote an opinion concurring in the disposition made of the appeal, but, on the ground that as the entire facts, which were made a part of the record, showed that the question had been fully investigated and fairly determined by the commission, it would be an idle thing to entertain the appeal and then affirm the judgment on the merits. Associate Justice Allen concurred in the result without further expression of his position, and the ChiefJustice dissented, being of opinion that an appeal would lie. So that, even on the facts of that record, a majority of the Court have not expressed agreement as to the interest required for the maintenance of an appeal in these cases. And I think I may safely say that none of the Court entertain the view that the right of appeal in such cases is necessarily restricted to the State, and a defendant corporation, whose interests are adversely affected, but, as held in the subsequent case of R. R. v. R. R.,173 N.C. 413, any one appearing as a party, whether as petitioner or respondent, plaintiff or defendant, having a proper interest in the controversy, may appeal from an order which affects such interests adversely.
In the present case, as we have endeavored to show, the city of Charlotte has such an interest, and the judgment of his Honor allowing it to prosecute the appeal is
Affirmed. *Page 167